Michael A. Strauss (State Bar No. 246718)
mike@strausslawyers.com
Aris E. Karakalos (State Bar No. 240802)
aris@strausslawyers.com
Andrew C. Ellison (State Bar No. 283884)
andrew@strausslawyers.com
STRAUSS & STRAUSS, APC
121 N. Fir St., Suite F
Ventura, California 93001
Telephone: (805) 641.6600
Facsimile: (805) 641.6607

Attorneys for Plaintiff Edgar Orozco and the
Putative Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR OROZCO, an individual, for himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARDENT COMPANIES, INC., a Louisiana corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.  2:18-CV-02763-GW (SSx)<br><br>*Assigned to: Hon. George H. Wu*<br><br>**PUTATIVE CLASS ACTION**<br><br>**NOTICE OF PLAINTIFF'S MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>HEARING:<br>Date:        Thursday, March 21, 2019<br>Time:        8:30 a.m.<br>Place:       Courtroom 9D, 9th Floor<br>                350 West 1st Street<br>                Los Angeles, CA 90012 |

**TO DEFENDANT ARDENT COMPANIES, INC. AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, March 21, 2019, at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable George H. Wu, at the

First Street Courthouse, 350 West 1st Street, Courtroom 9D, 9th Floor, Los Angeles, California 90012-4565, Plaintiff Edgar Orozco ("Plaintiff") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order:

1. Granting preliminary approval of the proposed settlement upon the terms and conditions set forth in the Stipulation of Class Action Settlement and Release (hereinafter referred to as the "Settlement" or "Agreement");

2. Certifying the following class for settlement purposes only: "All current and former hourly employees of Defendant Ardent Companies, Inc., who, at any time from February 23, 2014 through the date of preliminary approval ("Class Period"), worked on oil platforms off the California coast on the Outer Continental Shelf (consisting of submerged lands, subsoil, and seabed more than three nautical miles off the mainland) for periods of 24 hours or more, stayed offshore overnight, and whose offshore shifts or hitches began from and ended on California soil." ("Settlement Class");

3. Approving the proposed manner of mailing of the Notice of Settlement set forth in the Settlement and the size and contents of the Notice of Proposed Class Action Settlement;

4. Appointing CPT Group, Inc. ("CPT") as the Claims Administrator;

5. Appointing the law firm of Strauss & Strauss, APC as Class Counsel and Plaintiff Edgar Orozco as Class Representative; and

6. Setting a final fairness hearing to consider the fairness, reasonableness and adequacy of the proposed Settlement as well as the award of attorney's fees and costs to Class Counsel and Service Award to the Class Representative (Plaintiff proposes a hearing of Monday, July 29, 2019 at 8:30 a.m.).

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Aris E. Karakalos, Michael A. Strauss and Edgar Orozco, filed concurrently herewith, all supporting exhibits filed herewith, all

1  other pleadings and papers filed in this action, and any argument or evidence that may be
2  presented at the hearing in this matter.
3      Plaintiff anticipates that this Motion will be *unopposed* by Defendant Ardent
4  Companies, Inc. for purposes of this proposed class action settlement.
5      This motion is made following the conference of counsel pursuant to L.R. 7-3,
6  which took place on January 18, 2019 and repeatedly thereafter.
7
   Dated:  February 19, 2019      **STRAUSS & STRAUSS, APC**
8
9                  By: /s/_____
10                      Aris E. Karakalos
                        Attorneys for Plaintiffs and the Putative Class
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................... 2

III.  PROCEDURAL BACKGROUND ............................................................ 3

IV.   SETTLEMENT PROCESS ....................................................................... 5

V.    SUMMARY OF THE PROPOSED SETTLEMENT ................................ 7

   A.   SETTLEMENT TERMS ................................................................................ 7

     1.    Settlement Class Members and Class Period ................................... 7

     2.    Maximum Settlement Amount and Net Settlement Amount ............. 8

     3.    Class Counsel Fees and Costs ......................................................... 8

     4.    Service Awards to Named Plaintiffs ............................................... 8

     5.    Settlement Shares ............................................................................ 9

     6.    No Cy Pres Awardee ...................................................................... 10

     7.    Selection of CPT Group, Inc. as Claims Administrator ................ 10

     8.    Opt-Outs and Objections to Settlement ........................................ 11

     9.    Scope of Release ........................................................................... 11

     10.   Class Notice .................................................................................. 12

     11.   Fair, Adequate and Reasonable Settlement .................................. 12

VI.   LEGAL ARGUMENT .............................................................................. 13

   A.   PLAINTIFF'S LEGAL THEORIES. ............................................................... 13

     1.    Minimum Wages and Overtime Claims ......................................... 13

     2.    Rest Period Claim ......................................................................... 14

     3.    Meal Period Claim ........................................................................ 15

     4.    Unfair Competition Claim ............................................................. 16

     5.    Waiting-Time Penalty Claim ......................................................... 16

     6.    FLSA claims .................................................................................. 17

NOTICE OF PLAINTIFF'S MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

B.   CERTIFICATION OF THE CLASS IS APPROPRIATE ........................................................17

  1.   The Settlement Class Is Sufficiently Numerous ................................................18

  2.   Questions of Law or Fact are Common to the Class..........................................18

  3.   The Class Representatives' Claims Are Typical of the Class.............................19

  4.   The Class Representative and her Counsel Will Fairly and
  Adequately Protect the Settlement Class Members' Interests. ...............................20

  5.   A Class Action is Superior to Alternative Methods. ..........................................21

C.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT........................21

  1.   The Proposed Settlement is Well Within the Range of Reasonableness ...........23

  2.   Risks of Further Litigation Support Preliminary Approval ...............................25

  3.   Benefit to Settlement Class Members ................................................................27

  4.   The Settlement is the Product of Informed, Non-Collusive Negotiation..........28

  5.   The Settlement Agreement Has No Obvious Deficiencies ................................28

  6.   Counsel Have Determined that the Settlement Is Appropriate and Fair...........29

  7.   The Proposed Class Notice Should Be Approved..............................................29

  8.   The Method of Sending Notice Satisfies Due Process......................................30

  9.   The Court Should Appoint CPT Group, Inc. as Claims Administrator ............31

D.   PROPOSED SCHEDULE FOR REMAINING PROCEDURES ............................................31

VII. CONCLUSION .....................................................................................................31

1

**TABLE OF AUTHORITIES**

2

CASES

3

4   *Amchem Prods. Inc. v.* Winsor, 521 U.S. 591 (1997) ------------------------------------- 18

5   *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016) --------------------- 14, 15

6   *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450 (C.D. Cal. 2012) --------------------- 16

7   *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948)--------------------------------- 17

8   *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)------------------------------- 12

9   *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) -------------------------------------------- 25

10  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)------------------------ 21

11  *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000)---------------- 16

12  *Deaver v. Compass Bank*, No. 13–cv–00222–JSC, 2015 WL 4999953,

13      (N.D. Cal. 2015) ----------------------------------------------------------------------- 23, 28

14  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)-------------------------------------- 30

15  *Finder v. Leprino Foods Co.*, No. 1:13–CV–2059 AWI–BAM,

16      2015 WL 1137151 (E.D. Cal. Mar. 12, 2015) --------------------------------------- 16

17  *H&R Block Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2nd Cir. 2005) ------------- 12

18  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ---------------------------- passim

19  *Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) ---------------------------- 19

20  *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) ------------------------------- 25

21  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078 (N.D. Cal. 2007)---------------1, 22

22  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*,

23      527 F.Supp.2d 1053 (N.D. Cal. 2007) ----------------------------------------------- 21

24  *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991);

25  *Griffith v. Kentucky*, 479 U.S. 314 (1987) -------------------------------------------- 25

26  *Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ----------------------------- 12, 29

27  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)------------------------ 22

28  *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833 (2015) ----------------------------- 13, 14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

   221 F.R.D. 523 (C.D. Cal. 2004) ------------------------------------------------- 25

*Newton v. Parker Drilling Mgmt. Servs., Ltd.,* 881 F.3d 1078 (9th Cir. 2018)----------- 6

*Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576 (2010)------------------------------ 16

*O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003) ----------------------------- 17

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) --------------------- 18

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

   688 F.2d 615, 625 (9th Cir. 1982) ------------------------------------------------- 22

*Rodriguez v. Hayes,* 591 F.3d 1105 (9th Cir. 2010) ---------------------------------- 19

*Safeway v. Superior Court of Los Angeles County*, 238 Cal.App.4th 1138 (2015)----- 16

*Seymore v. Metson Marine, Inc.* 194 Cal.App.4th 361 (2011) --------------------------- 13

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ------------------------------------------- 30

*Thomas v. TD Ameritrade, Inc.*, No. C08-02397 WDB,

   2009 WL 8730175 (N.D. Cal. Sept. 29, 2009)------------------------------------- 29

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) -------------- 25

*Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468 (E.D. Cal. 2009) ----------------------- 21

<u>STATUTES</u>

Cal. Bus. and Prof. Code § 17208----------------------------------------------------- 16

Cal. Civil Code § 1542 ---------------------------------------------------------------- 12

Cal. Labor Code § 201----------------------------------------------------------------- 16

Cal. Labor Code § 202----------------------------------------------------------------- 16

Cal. Labor Code § 203----------------------------------------------------------------- 16

Cal. Labor Code § 512----------------------------------------------------------------- 15

29 U.S.C. § 207------------------------------------------------------------------------ 17

43 U.S.C. §§ 1331, *et seq.*------------------------------------------------------------ 13

NOTICE OF PLAINTIFF'S MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## REGULATIONS

8 Cal. Code Regs. § 11050 -------------------------------------------------- 14, 15

29 C.F.R. § 778.116------------------------------------------------------------ 17

## RULES

Fed. R. Civ. Proc. 23 -------------------------------------------------------1, 18

Fed. R. Civ. Proc 30------------------------------------------------------- 17, 20

## TREATISES

4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155
  (4th ed. 2002)----------------------------------------------------------- 25

James Wm. Moore, Moore's Federal Practice - Civil § 23.165[3]
  (Matthew Bender 3d ed.) ------------------------------------------------ 22

Manual for Complex Litigation (4th ed. 2004) § 21.632-------------------------- 18

Newberg on Class Actions, § 8.32 -------------------------------------------- 29

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Edgar Orozco ("Plaintiff") moves this Court for an order preliminarily approving a proposed Stipulation of Class Action Settlement and Release (hereinafter sometimes referred to as the "Settlement" or "Agreement") entered by Plaintiff and Defendant Ardent Companies, Inc. ("ARDENT"). A true and correct copy of the Settlement and its Exhibits A-D including of a redacted overnight log and proposed Notice Packet, is attached to the concurrently filed Declaration of Aris E. Karakalos ("Karakalos Decl.") as Exhibit A.

The Settlement was achieved with the assistance of mediator Michael E. Dickstein of Dickstein Dispute Resolution, who oversaw a mediation in San Francisco, as well as a series of follow up communications spanning several weeks, which ultimately resulted in a substantial benefit to the 102 Settlement Class members.

Pursuant to the Settlement, the Maximum Settlement Amount is Two-Million Three-Hundred Twenty-Five Thousand Dollars ($2,325,000), inclusive of all payments to Settlement Class members, Class Counsel fees up to 33.33% of the common fund ($775,000) and expenses not to exceed $20,000, a Class Representative Service Award not to exceed $10,000, and claims administration costs not to exceed $7,500.

The Settlement readily satisfies the standard for preliminary approval – it is within the range of possible approval to justify sending notice to Settlement Class members and scheduling final approval proceedings. *See In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

Accordingly, Plaintiff seeks an order: (1) granting preliminary approval of the Settlement; (2) certifying the Settlement Class for settlement purposes only; (3) approving the manner and forms of giving notice to the Class; (4) appointing Strauss & Strauss, APC, to represent the Settlement Class as Class Counsel; (5) appointing Plaintiff Edgar Orozco as Class Representative; (6) appointing CPT Group as Claims Administrator; and (7) establishing a timetable for final approval of the Settlement.

//

## II.    STATEMENT OF FACTS

ARDENT operates as an electrical subcontractor for two major leaseholders (ExxonMobil Corporation ("Exxon") and Freeport McMoRan Oil & Gas ("Freeport")) who operate on federal offshore oil and gas platforms situated in federal waters off the California coast. (Karakalos Decl. at ¶ 5; Declaration of Edgar Orozco ("Orozco Decl." at ¶¶ 3-4.)   ARDENT served 5 separate platforms (4 for Exxon and 1 for Freeport). ARDENT ceased employing workers on Exxon platforms before this lawsuit was initiated. (Karakalos Decl. at ¶ 6; Orozco Decl. at ¶ 4.) ARDENT, employed only one individual on a single Freeport platform through July 31, 2018. (*Id*.) ARDENT no longer employs workers on the OCS. (*Id*.)

Plaintiff, who worked exclusively on Exxon platforms, was always on duty and could not leave the platforms, including during his controlled stand-by time at night, or for his meal and rest periods.  (Karakalos Decl. at ¶ 7; Orozco Decl. at ¶¶ 10-12.) During a scheduled hitch, the Plaintiff generally was scheduled to work a rotating 12-hour schedule.  Plaintiff alleges that he, and the putative class, were scheduled for 12 hours "on duty," followed by 12 hours of "controlled standby."  He alleges this cycle repeats, for the seven (7) consecutive days spent on the platform.  (Orozco Decl., at ¶ 9.) During a hitch, Plaintiff further alleges that he and the putative class were not able to leave the platform.  (Orozco Decl., at ¶ 12.)   The putative class were allegedly required to be "on call" and available to respond to issues that arose on the platform.  (Orozco Decl. at ¶¶ 10-11.)

In addition, Plaintiff alleges he and the putative class were required to listen for and respond to calls and alarms during meal and rest periods.  (Orozco Decl. at ¶ 12.)  If work calls or an alarm sounds, it is alleged that Plaintiff and the putative class members were required to drop whatever they were doing (or eating) and respond to the work. (*Id*.)

Also, Plaintiff alleges that he and the putative class were provided meals and lodging as a condition of our employment on the oil platforms and that the value of said

benefits were not included in their regular rate for calculation of their overtime pay. (Orozco Decl. at ¶ 14.)

Based on these factual allegations, Plaintiff alleges that ARDENT had the following common policies and practices affecting himself and the putative class: (1) requiring employees to remain on the oil platforms for the duration of their hitch; (2) only paying employees for 12 hours of work each day; (3) not paying employees for 12 hours of "controlled standby" time each day, whether at overtime, double-time, or minimum wage rates; (4) not having employees clock out for or receive duty free meal periods and rest periods; and (5) requiring employees to be ready to respond to alarms and calls during "on duty" and "controlled standby" time.  (Orozco Decl. at ¶¶ 7-13.)

ARDENT vigorously disputes all the Plaintiff's contentions and maintains that several factual and legal defenses are available to it.  *See, e.g.,* CM/ECF Doc. No. 27 [ARDENT Answer to FAC].  Specifically, ARDENT contends that Plaintiff, and the putative class, worked on offshore platforms affixed to the seabed of the Outer Continental Shelf, and as such California wage-and-hour laws do not apply to their employment.  Regardless, ARDENT contends that it paid Plaintiff and the putative class compensation for all hours they worked while on the offshore platforms. Moreover, ARDENT's position is that some of putative class members spent their off-duty time during their hitch on the offshore platforms at their own request or for their own personal preference. ARDENT alleges the remaining putative class members, depending on the circumstances presented, were able to leave their platform during their hitch upon request.  ARDENT further contends that Plaintiff and the putative class were provided all required meal and rest periods.  If a Plaintiff or putative class member ever did not take a compliant meal or rest period, ARDENT contends that he did so at his own election.  ARDENT further contends that class certification is not warranted.

## III.   PROCEDURAL BACKGROUND

On February 23, 2018 Plaintiff filed a Complaint against ARDENT in the Santa Barbara County Superior Court (Case No. 18CV00925), which ARDENT timely

3

removed to the United States District Court for the Central District of California. CM/ECF Doc. No. 1.

On January 18, 2019, Plaintiff filed a First Amended Complaint ("Complaint"), adding claims under the Fair Labor Standards Act ("FLSA"). CM/ECF Doc. No. 26. The Complaint alleges that ARDENT: (i) failed to pay all minimum wages, overtime and double-time wages for hours worked under California and the FLSA; (ii) failed to provide all meal periods in accordance with California law and failed to compensate for work performed during meal periods under California law and the FLSA; (iii) failed to authorize and permit all rest periods in accordance with California law; (iv) failed to include the value of non-discretionary bonuses, incentive payments, and the value of meals and lodging in the regular rate, under California law and the FLSA; (iv) engaged in unfair competition; and (vi) failed to pay employees all wages owed upon separation of employment. The claims in the Complaint include alleged work performed on California soil, in California state waters, and on offshore platforms on the Outer Continental Shelf ("OCS").

Plaintiff alleges that ARDENT committed these unlawful acts through (i) ARDENT's Handbook (2013 and 2015 eds.), which operated as ARDENT's employment guidelines, policies, and procedures and expressly affirmed application of California overtime laws to the Settlement Class, (ii) ARDENT's Safety Manual, General Health and Safety Policies, (Rev. October 2012, page 2 of 3), by which ARDENT adopted the rules and procedures of Exxon and other platform owner/operators) as ARDENT's own rules, and (iii) the instructions given by ARDENT's supervisory and managerial employees to the Settlement Class (collectively, "ARDENT's Directives"). As a result of ARDENT's Directives, the Complaint alleges that (i) employees were required by ARDENT to remain on the platform during meal breaks, rest breaks, and after the end of their shifts (including while sleeping), (ii) employees were required by ARDENT to remain on restricted on-call status during unpaid hours and break time, (iii) employees' meal and rest breaks were interrupted by work duties, (iv) ARDENT failed to include

non-discretionary bonuses/incentives and the value of meals and lodging in the regular rate for overtime calculation purposes; and (v) ARDENT failed to compensate employees for time spent on California's soil, and transportation to and from oil platforms which necessarily included time spent on California's mainland.

## IV.   SETTLEMENT PROCESS

Prior to engaging in private mediation, the parties exchanged significant information through written discovery and other informal means.  ARDENT produced upwards of 500 pages of handbooks, personnel files, pay records, time cards, company policies, contracts, and even a series of training videos furnished by ExxonMobil. ARDENT also cooperated in producing all names and contact information for putative class members (106 members, later reduced to 102 because some members did not stay overnight on the platforms) (Karakalos Decl. at ¶ 11).

ARDENT also provided Plaintiff's counsel with copies of a Release of Liability Packet sent out to all Settlement Class members, of which 53 signed in exchange for payment by ARDENT.  In total, these 53 individuals released their claims in exchange for a total of $60,000.[1] (Karakalos Decl. at ¶ 12).

The amount of information produced by ARDENT through written and oral discovery, both formal and informal, allowed the parties to conduct a thorough investigation pre-mediation.  As of the time of the mediation, the Parties had a detailed and nuanced understanding of the factual and legal scenarios involved in this case. ARDENT also produced a "Person Most Qualified" deponent under Federal Rules of Civil Procedure, Rule 30(b)(6). This deponent provided significant testimony bearing not only on class certification issues, but the merits of Plaintiff's claims as well.  (Karakalos Decl. at ¶ 13).

---

[1] The Settlement herein includes these 53 individuals, who will receive the same pro-rata share of the Net Settlement as those who did not sign Release of Liability forms. Any amounts they are entitled to shall be reduced by the amounts they previously received.  The full $60,000 previously paid out is included in the Maximum Settlement Amount under the Settlement.  Settlement at ¶ 3(A).

Thus, the Parties were equipped with ample factual and legal information to accurately assess the relative merits of their positions and to evaluate the worth of the claims of the Settlement Class.  This understanding was always the foundation to the good-faith, arm's-length negotiations.

The Parties exchanged mediation briefs regarding their respective positions and arguments and the evidence in this Action.  They attended a mediation in San Francisco under the guidance of mediator Michael Dickstein.  Although the case did not settle at mediation, Mr. Dickstein continued to engage both sides over the telephone and, after several months of telephonic efforts, the parties were able to reach a resolution. (Karakalos Decl. at ¶ 14).   Accordingly, the Parties believe that the terms of the Settlement reflect a fair and equitable compromise.

Plaintiff and Plaintiff's Counsel believe that the claims, allegations and contentions asserted in the Action have merit.  However, Plaintiff and Plaintiff's Counsel recognize and acknowledge the expense and delay of the lengthy proceedings necessary to prosecute the Action against ARDENT through trial and appeals.  Given the limited precedent governing some of the key legal issues in the case, Plaintiff recognizes that appeals would be a virtual certainty in the action. (Karakalos Decl. at ¶ 15.) Furthermore, Plaintiff's Counsel has considered the risks inherent in *any* litigation, and the additional risk of continued litigation in complex actions such as this.  Plaintiff's Counsel has also considered the potential difficulty in certifying and maintaining the Action as a class action. (Karakalos Decl. at ¶ 16.)

Plaintiff's Counsel are also mindful of the inherent problems of proof under, and possible defenses to, the claims alleged in the Action. After all, whether California law even applies to the platforms an uncertainty.  The determinative case – *Newton v. Parker Drilling Mgmt. Servs., Ltd.,* 881 F.3d 1078 (9th Cir. 2018) – in which the United States Court of Appeals for the Ninth Circuit reversed the Central District Court's dismissal, and held that California's (as opposed to the FLSA's) minimum wage and overtime laws apply to the oil platform workers on the Outer Continental Shelf (hereinafter the "*Newton*

NOTICE OF PLAINTIFF'S MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Action") – was taken up for review by the United States Supreme Court.[2] (Karakalos Decl. at ¶ 17).   Plaintiff's counsel happens to also represent the plaintiff in the *Newton* Action which is scheduled to be heard on April 16, with a decision expected this June. (*Id*.)

The *Newton* Action was a major factor in settlement considerations. (Karakalos Decl. at ¶ 18).  It will significantly impact the merits of this case.  The uncertainty of whether the U.S. Supreme Court was going to even grant certiorari was a risk factor accounted for in reaching this settlement. (*Id*.)  Considering this potential risks, Plaintiff's Counsel believes that the terms set forth in the Settlement confer substantial benefits upon Plaintiff and each of the other members of the Settlement Class, and that an independent review of the Settlement Agreement by the Court in the approval process will confirm this conclusion.

Based on their own independent investigation and evaluation, Plaintiff's Counsel has determined that the terms set forth in the Settlement Agreement are in the best interests of Plaintiff and the other members of the Settlement Class.

**V.    SUMMARY OF THE PROPOSED SETTLEMENT**

   **A. Settlement Terms**

      ***1.  Settlement Class Members and Class Period***

The Settlement Class consists of: "All current and former hourly employees of Defendant Ardent Companies, Inc., who, at any time from February 23, 2014 through the date of preliminary approval ("Class Period"), worked on oil platforms off the California coast on the Outer Continental Shelf (consisting of submerged lands, subsoil, and seabed more than three nautical miles off the mainland) for periods of 24 hours or more, stayed offshore overnight, and whose offshore shifts or hitches began from and ended on

---

[2] Titled *Parker Drilling Management Services, Ltd., v. Newton*, Case No. 18-389.  The docket and briefing can be accessed at https://www.scotusblog.com/case-files/cases/parker-drilling-management-services-ltd-v-newton/

7

California soil." (Settlement at ¶ 1.)  The "Class Period" is "at any time from February 23, 2014 through the date of preliminary approval."  (Settlement at ¶ 1.)

### 2.  *Maximum Settlement Amount and Net Settlement Amount*

Under the terms of the Settlement, ARDENT agrees to pay a non-reversionary maximum sum of $2,325,000.  This Maximum Settlement Amount is inclusive of all payments to Settlement Class members under the terms of this Settlement, Class Counsel Fees (up to and not to exceed 33.33% of the Maximum Settlement Amount) and Expenses (not to exceed $20,000) awarded by the Court, the Class Representative Service Award (up to $10,000) approved by the Court, and Claims Administration Costs (not to exceed $7,500)[3]  (Settlement at ¶ 3.)

"Net Settlement Amount" means the Maximum Settlement Amount less Class Counsel Fees and Expenses approved by the Court, the Class Representative's Service Award approved by the Court, and the Claims Administration Costs.  (Settlement at ¶ 4(A).)

### 3.  *Class Counsel Fees and Costs*

ARDENT will not object to an award of attorneys' fees to Class not to exceed 33.33% of the Maximum Settlement Amount (or $775,000.00) and up to $20,000 in costs. (Settlement at ¶ 3(D)(4).)  Class Counsel will present the rationale behind their fee request in their final fee motion.

### 4.  *Service Awards to Named Plaintiffs*

The Named Plaintiff will seek a Service Awards up to $10,000, and ARDENT will not object to the requested Service Award up to this amount. (Settlement at ¶ 3(D)(3).) The Settlement Agreement specifically states that the settlement of the action is not contingent on the Named Plaintiff's receipt of any Service Award out of the Maximum Settlement Amount.  (*Id.*)

---

[3] In addition to the Maximum Settlement Amount, ARDENT agrees to pay its share of any taxes owed for wages paid to the Settlement Class members (employer's share of any federal, state and local taxes, such as FICA).  (Settlement at ¶ 3(E).)

### 5. Settlement Shares

Each Class Member will be entitled to receive a portion of the Net Settlement Amount, determined as follows:

i. The amount that each Settlement Class Member will be eligible to receive under the Settlement will be determined by converting the Net Settlement Amount into a Daily Value. The Daily Value will be established by dividing the Net Settlement Amount by all Covered Workdays for the entire 24-hour days on which the 102 members of the Settlement Class worked and then stayed overnight ("Shifts") on the platforms off the California coast (and on the Outer Continental Shelf) from February 23, 2014, through the date of preliminary approval. The total number of Covered Workdays during the Class Period, according to ARDENT's number of Shifts worked for Settlement Class Member during the class period will be supplied by ARDENT the Administrator and derived from ARDENT's business records, is 10,152. This total number of Covered Workdays is unlikely to change through preliminary approval because ARDENT no longer employs anyone on the platforms in question.

ii. The individual "Settlement Award" payment for each Settlement Class member will be determined by multiplying the Daily Value by the number of Covered Workdays for the Shifts they individually worked during the Class Period.

iii. Those Settlement Class members who previously signed a Release of Liability form (approximately 53 in total, receiving a total of $60,000 in exchange) shall be entitled to their proportional share of the Settlement Fund, minus the amounts they already received in exchange for signing an individual settlement agreement ("Release of Liability"). In other words, ARDENT will receive a credit for the Released/Credited Amount.

//

iv. The individual Settlement Awards payments will be apportioned as follows:

- 33% as interest and 33% as penalties. The amounts paid as penalties and interest shall be subject to all authorized and required withholdings other than the tax withholdings customarily made from employees' wages and shall be reported by IRS 1099 forms.
- 34% as wages. The amounts paid as wages shall be subject to all authorized and required payroll and other tax withholdings customarily made from employees' wages and shall be reported on W-2 forms.
- For those 53 Settlement Class members who previously signed a Release of Liability and received, in the aggregate, $60,000, appropriate taxes have already been withheld and the foregoing 33/33/34 split does not apply.

Settlement at ¶ 4(B).

A preliminary estimate of each Class Member's settlement payout amount of the Net Settlement Amount, pursuant to the foregoing formula, is set forth in the Excel spreadsheet attached to the Karakalos Decl. as Exhibit B.

### 6. *No Cy Pres Awardee*

Each member of the Settlement Class who receives a Settlement Award must cash that check within 180 days from the date the Settlement Administrator mails it. Any funds payable to Settlement Class members whose checks were not cashed within 180 days after mailing will escheat to the state Department of Industrial Relations in the name of the Settlement Class member. (Settlement at ¶ 4(E).)

### 7. *Selection of CPT Group, Inc. as Claims Administrator*

The parties have agreed that CPT Group, Inc. ("CPT") will act as Claims Administrator. (Settlement at ¶ 3(B).) Class Counsel have obtained a "not to exceed" quote from CPT of $7,500. Karakalos Decl., Exhibit C.

//

### 8. *Opt-Outs and Objections to Settlement*

Settlement Class members are not required to sign a claim form to participate. Settlement Class members will have forty-five (45) calendar days after the date that the Claims Administrator mails the Class Notice to submit a written opt-out notice (Settlement at ¶ 9(C)) and will have until 20 days before the Final Approval Hearing to submit objections (Settlement at ¶ 9(D).)  Settlement Class members who do not request exclusion may object to the Settlement Agreement as explained in the Class Notice by filing a written objection with the Settlement Administrator (who shall serve all objections as received on Class Counsel and Defendant's counsel, as well as file all such objections with the Court). (*Id*.)  Counsel will have ten days to respond (*Id*.)

### 9. *Scope of Release*

In exchange for the consideration, undertakings, and covenants undertaken by ARDENT in this Settlement, all Settlement Class members will release ARDENT, its present and former parent companies, subsidiaries, related or affiliated companies or entities, joint ventures, partners, shareholders, officers, directors, employees, agents, attorneys, insurance carriers, successors and assigns, and any individual or entity which could be jointly liable with ARDENT (all of whom are hereinafter referred to as "Released Parties"), from all claims and causes of action, either actually alleged or which could have reasonably been alleged, under California law and/or the FLSA, based on the facts, claims, causes of action or legal theories of relief in the Complaint, including, without limitation, that because of ARDENT's Directives, ARDENT: (a) failed to pay all minimum wages, overtime and double-time wages owed; (b) failed to provide all meal and/or rest periods; (c) failed to timely pay all wages due or final wages due; (d) failed to include the value of non-discretionary bonuses, incentive payments, and the value of meals and lodging in the regular rate; and (e) committed unfair business practices (collectively, the "Released Claims").  The Released Claims, as alleged in the Complaint, include claims pertaining to alleged harm suffered by the Settlement Class working on the mainland ports from which they departed and returned to service OCS oil platforms,

California waters travelled on to and from the OCS oil platforms, , and on the OCS oil platforms.  The period of the Release shall extend to the limits of the Class Period.  The res judicata effect of the judgment will be the same as that of the Release. (the "Released Claims"). (Settlement at ¶ 2(A).)  In addition, Plaintiff Orozco will provide a complete and general release under California Civil Code Section 1542 of all known and unknown claims arising out of her employment or due to the ending of employment.  (Settlement at ¶ 2(B).)

### 10. Class Notice

The parties have agreed on a Notice Packet to be mailed to the Settlement Class members. (Settlement at ¶ 9(B).)  The Notice Packet is comprised of the Class Notice, Notice of Settlement Award, and Request for Exclusion Form, all of which are attached to the Settlement as Exhibits B-D.  The Class Notice informs the Settlement Class members of the essential terms of the Settlement and their right to object thereto.  The Class Notice will be mailed by First Class Mail by the Claims Administrator, who will perform a skip-trace on returned mail and re-mail the Class Notice to Settlement Class members for whom new addresses are found.  (Settlement at ¶¶ 9(E-F).)

### 11. Fair, Adequate and Reasonable Settlement

The parties believe and agree that the Settlement, which was reached after extensive negotiations, is a fair, adequate, and reasonable resolution of the action and have arrived at the Settlement in arms-length negotiations, considering all relevant factors, present and potential.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2nd Cir. 2005).  See *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

## VI.    LEGAL ARGUMENT

### A. Plaintiff's Legal Theories.

The claims asserted by Plaintiff primarily (although not exclusively) arise from work performed on the oil platforms located more than three miles off the California coast, in an area known as the Outer Continental Shelf.    As confirmed by the Ninth Circuit U.S. Court of Appeals in the *Newton* Action, the labor laws of the adjacent state are adopted as surrogate federal law on the Outer Continental Shelf and devices attached to it when those state laws are "applicable and not inconsistent" with federal law. Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331-1356b.

#### *1.  Minimum Wages and Overtime Claims*

In the *Newton* Action the Ninth Circuit held that California's minimum wage and overtime laws are more protective than those found under the FLSA.  Thus, by way of the FLSA's Savings Clause, these laws are both "applicable and not inconsistent" with federal law.  With respect to Plaintiff's claim for minimum wage and overtime, California law is clear in requiring that "all hours worked" must be compensated at statutory minimum wage or overtime rates.  In *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833 (2015), the California Supreme Court clarified that a liberal two-pronged standard applies to this determination of what constitutes "hours worked."  *Mendiola* is on point with the case at hand.   In *Mendiola*, defendant CPS Security provided on-site guards at construction sites.  As part of their duties the guards were required to be on-call to respond to any emergencies and to sleep in trailers placed at the sites.  Mendiola found that the guards' on-call and sleep time both met the definition of "hours worked" under California law and therefore had to be paid.  Also, *Mendiola* expressly ruled that employers cannot exclude sleep time from wages during "on call" time by agreement between the employer and the employee unless a state wage order provides otherwise. It disapproved of an earlier case, namely *Seymore v. Metson Marine, Inc.* 194 Cal.App.4th 361 (2011), which ruled that an employee could agree to exclude sleep periods from hours worked. Defendants in *Mendiola* argued for application of the more favorable federal Fair Labor

Standards Act, which permits sleep time exclusions under certain circumstances. However, the court ruled that California courts should not incorporate federal standards on compensable time unless there is convincing evidence that the Industrial Welfare Commission intended to do so.  The court found no such intent.

Based on the holdings in *Newton*, *Mendiola*, and *Seymore*, Plaintiffs believe that all hours spent on the platforms are compensable.  Since ARDENT only compensated Settlement Class members for 12 hours per day, the remaining 12 hours is owed at either overtime or double-time rates.

### 2.  Rest Period Claim

California Industrial Welfare Commission Wage Order 5-2001 ("Wage Order 5") requires employers to provide duty-free rest periods to ten minutes in duration to nonexempt employees for each four-hour period they work.  8 Cal. Code Regs. § 11050(12)(A).  California Labor Code section 226.7(c) mandates that, if an employer fails to provide a rest period in accordance with the California Wage Orders, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the ... rest ... period is not provided."  To be compliant with California law, rest periods must be duty-free.  "[D]uring rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time."  *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269 (2016).  An employee who cannot leave the work premises remains subject to the employer's control.  "'When an employer directs, commands or restrains an employee from leaving the work place ... and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control.  According to [the definition of hours worked], that employee must be paid.'"  *Mendiola*, 60 Cal. 4th at 840 (internal citations omitted).  Thus, when an employer restricts an employee to the worksite during his or her rest period, Plaintiff contends the employee remains subject to the employer's control.  Pursuant to *Augustus*, such an

1   employee must be paid one hour of additional pay at the employee's regular rate of

2   compensation. *Augustus*, 2 Cal.5th at 272.

3        Plaintiff alleges that ARDENT is liable for rest period premiums because it did not

4   provide Plaintiff and the putative class members with duty-free rest periods. He alleges

5   that he and the putative class could not leave the platforms and were always under the

6   control of ARDENT. ARDENT never paid the putative class for their rest period

7   premiums when they did not receive a duty-free rest period. Consequently, Plaintiff

8   asserts that ARDENT will be liable for such premiums under Labor Code section 226.7.

9        ### 3. *Meal Period Claim*

10        The California Labor Code and Wage Order 5 establish the parameters of lawful

11   meal periods in the state. An employer may not employ an employee for a work period

12   of more than five hours per day without providing the employee with an uninterrupted

13   meal period of not less than thirty minutes, except that if the total work period per day of

14   the employee is not more than six hours, the meal period may be waived by mutual

15   consent of both the employer and the employee. Lab. Code § 512; 8 Cal. Code Regs. §

16   11050(11)(A). A second meal period of at least 30 minutes is required if the employee

17   works more than ten hours per day but may be waived if the employee works 12 or fewer

18   hours. *Id.* An "on duty" meal period shall be permitted *only when the nature of the work*

19   *prevents an employee from being relieved of all duty* and when by written agreement

20   between the parties an on-the-job paid meal period is agreed to. 8 Cal. Code Regs. §

21   11050(11)(A) (emphasis added).

22        Plaintiff alleges that ARDENT failed to abide by California's meal period laws by

23   not providing off-duty meal periods because Plaintiff and the putative class could not

24   leave the work premises and were always subject to the control of ARDENT. (Orozco

25   Decl. at ¶¶ 7-13.) Plaintiff seeks meal period premiums under California Labor Code

26   section 226.7 for ARDENT's failure to comply with California's meal period laws.

27   Section 226.7(c) provides, in pertinent part, that if an employer fails to provide an

28   employee a meal period in compliance with California law or the applicable Wage Order,

the employer must pay one additional hour of pay at the employee's regular rate of pay for each workday that the meal period is not provided.

### 4.  Unfair Competition Claim

Generally, the UCL permits employees to obtain restitution for unpaid wages. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000).  The majority of California authorities suggest premium wages due under Labor Code section 226.7 are recoverable as restitution under the UCL.  *See Safeway v. Superior Court of Los Angeles County*, 238 Cal. App. 4th 1138, 1155-56 (2015) (review denied).  The statute of limitations for restitution under the UCL is four years.  Bus. & Prof. Code § 17208.  Because Plaintiff seeks restitution of meal/rest period premiums under the UCL, the look-back period for her meal/rest period claim is four years, i.e., from February 23, 2014 to the present.

### 5.  Waiting-Time Penalty Claim

Labor Code sections 201 and 202 require the payment of all wages owed at an employee's termination or resignation.  Labor Code section 203 establishes a penalty of up to thirty days of wages when an employer willfully fails to comply with sections 201 and 202.  A good faith dispute as to whether wages were owed (including a good faith belief in a legal defense) precludes an award of waiting time penalties under Section 203. *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 584 (2010). Courts within the Ninth Circuit have held that the failure to pay rest period premiums in an employee's final paycheck may trigger liability for a waiting-time penalty under section 203, so long as the failure to pay is willful.  *See Finder v. Leprino Foods Co.*, No. 1:13–CV–2059 AWI–BAM, 2015 WL 1137151, at *5 (E.D. Cal. Mar. 12, 2015); *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 465 (C.D. Cal. 2012).  Given that what seems to be the majority of courts in the Ninth Circuit have found meal/rest period premiums to be "wages" due in an employee's final paycheck under Labor Code sections 201 through 203, Plaintiff would expect the Court in this matter to reach the same conclusion.

Plaintiff seeks waiting-time penalties under Labor Code section 203 for ARDENT's failure to pay all rest period premiums due to Plaintiff and the putative class at their termination/resignation.

### 6. FLSA claims

Calculation of an employee's "regular rate" is the "linchpin" of every Fair Labor Standards Act overtime case. *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003). This is because the FLSA requires employers to pay non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a). The employee's regular rate generally includes "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e); cf. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948) ("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."). Even "payments" such as an employer's provision of meals or lodging (i.e., non-cash compensation) must be considered. 29 C.F.R. § 778.116. In short, with few statutory exceptions, everything of value provided to the employee must be included in the employee's "regular rate" for overtime purposes. In sum, the rate used by ARDENT to calculate the regular rate for the Settlement Class members was a few dollars lower than it should have been.[4]

### B. Certification of the Class is Appropriate

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement class is a proper class for settlement purposes. *See generally*

---

[4] Relying on testimony from ARDENT's Person Most Qualified (FRCP, Rule 30(b)(6) deponent) the value of meals were approximated at $10 (or $30 a day for 3 meals). Plaintiff's counsel also estimated lodging to be worth $90 per day based on California per-diem data found online. Thus, the total value of meal and lodging was approximated at $120, which amounts to $5 per hour when divided by the full 24 hours of estimated daily work. This added value under the FLSA was considered in the damages estimates during the latter part of settlement negotiations. (Karakalos Decl. at ¶ 28).

Fed. R. Civ. P. 23(e); Manual for Complex Litigation (4th ed. 2004) § 21.632. Courts routinely and properly certify classes for settlement purposes only and the proposed certification of the class is entirely consistent with the applicable authorities. *Amchem Prods. Inc. v.* Winsor, 521 U.S. 591, 619-29 (1997). Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). All four elements are satisfied here.

### 1. The Settlement Class Is Sufficiently Numerous

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In addition, the class should be "ascertainable," meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, based on ARDENT's records, as of September 21, 2018, when the parties exchanged information in advance of the mediation, there were approximately 106 persons fitting the class definition. (Karakalos Decl. at ¶ 11.) This number has since been reduced to 102 based on the understanding that four of the estimated Settlement Class members did not spend any overnights on the platforms. (*Id.*) This is facially sufficient to satisfy Rule 23's numerosity and ascertainability requirements. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

### 2. Questions of Law or Fact are Common to the Class

The commonality requirement requires that there be "questions of law or fact to the class." Fed. R. Civ. P. 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and law which are common to the class." *Hanlon*, 150 F.3d at 1019. The commonality requirement should be "construed permissively," meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

//

Here, Plaintiff alleges that all putative class members were subject to the same wage and hour policies and practices as articulated in company handbooks and policy manuals, including having to remain on the oil platforms for the entirety of the multi-day hitch, including during meal and rest periods.  (Karakalos Decl. at ¶ 7; Orozco Decl. at ¶¶ 7-13.)  Because they could not leave the premises during their hitches, Plaintiff maintains they were subject to the control of ARDENT and ARDENT did not relieve them of their duties.  Because these questions of law and fact are common to the class, the commonality requirement is met.

### 3.  The Class Representatives' Claims Are Typical of the Class

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives.  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similarly injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).  "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010).

Here, Plaintiff represents all putative class members who were not properly compensated during the Class Period due to the same unlawful policies and practices of ARDENT, e.g., its class-wide practice of not relieving them of all duty for the entire multi-day hitch including during their meal and rest periods.  Accordingly, Plaintiffs' claims are typical of those of the Settlement Class members.

//

//

//

### 4. The Class Representative and her Counsel Will Fairly and Adequately Protect the Settlement Class Members' Interests.

Rule 23(a)(4) requires that the Class Representatives "fairly and adequately protect the interests of the class." Rule 23(g) requires the Court to consider Class Counsel's prior experience, knowledge and ability to properly represent the Class.

Here, Plaintiff Orozco will fairly and adequately protect the interests of the Settlement Class members. He has no conflicts of interest with the other Settlement Class members and does not seek any different relief than that he seeks on behalf of Settlement Class members. Additionally, Plaintiff is committed to the action and has devoted time to assisting counsel with the action, providing documents and reviewing pleadings. (Orozco Decl. at ¶ 19.) Plaintiff also assisted with preparation for mediation and attended the mediation session telephonically. (*Id*.) Plaintiff has no interests that are antagonistic to other Settlement Class members. (*Id*. at ¶ 25.) Because the Plaintiff will fairly and adequately protect the interests of the Class and because he has no conflicts of interest with the other Settlement Class members the Court should appoint Edgar Orozco as Class Representatives for purposes of the Settlement.

"An order certifying a class action ... must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Courts must consider counsels' work in identifying or investigating claims; counsel's experience in handling the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Here, the work that Plaintiff's counsel performed provides a substantial basis for the Court's finding that they satisfy Rule 23(g)'s criteria. For instance, they identified the issues and brought the instant action on behalf of a sizeable number of putative class members, interviewed many class members to evaluate the strength of Plaintiff's arguments, reviewed payroll and other class data to construct a detailed damages model, participated in mediation and subsequent negotiations, and eventually settled the case.

//

Additionally, counsel have vast experience handling wage and hour cases, know the applicable law, and are committed to representing the Class. (Declaration of Michael A. Strauss ("Strauss Decl."), at ¶¶ 6-15; Karakalos Decl., ¶¶ 35-41.) Accordingly, the Court should appoint the law firm of Strauss & Strauss, APC to represent the class as Class Counsel for purposes of the Settlement.

### 5.  A Class Action is Superior to Alternative Methods.

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These provisions are referred to as the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022-23.

As discussed, Plaintiff alleges that ARDENT's policy of not allowing Settlement Class members to leave the work premises (oil platforms) during their multi-day hitches applied uniformly to all Settlement Class members. Claims based on this type of commonly-applied policy are generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3). *See Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, despite minor factual difference between individual class members, where the case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1065-68 (N.D. Cal. 2007) (finding predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members). Accordingly, conditional class certification under Rule 23(a) and Rule 23(b)(3) is warranted.

### C. The Court Should Preliminarily Approve the Settlement

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only

with the court's approval."  The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Settlements minimize potentially substantial litigation expenses for both sides and conserves judicial resources.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

A class action settlement must be fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2).  At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.  *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

Furthermore, courts must give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027.  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the produce of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a how, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

Thus, preliminary approval does not require the Court to make an in-depth and final determination that a settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the Class. *See* James Wm. Moore, Moore's Federal Practice - Civil § 23.165[3] (Matthew Bender 3d ed.). Moreover, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the

merits. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

### 1. The Proposed Settlement is Well Within the Range of Reasonableness

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Deaver v. Compass Bank*, No. 13–cv–00222–JSC, 2015 WL 4999953, at *9 (N.D. Cal. 2015).

Here, the Settlement is well within the reasonable range. (Karakalos Decl. ¶ 28.) Plaintiff estimated that ARDENT's maximum liability through March 2019 was approximately $14,000,000.

Plaintiff calculated the value of the claims as follows:

| DATA | | |
|---|---|---|
| | 102 | Class Size |
| | 81 | Terminated since 2.23.15 (for LC 203 penalty) |
| | 10152 | Total overnight shifts |
| | 12 | Doubletime Hours per Shift |
| $ | 5.00 | FLSA missing value ($120 value / 24hrs work) |
| $ | 34.66 | Regular Rate (Including added $5 FLSA value) |
| $ | 51.99 | Overtime Rate |
| $ | 69.32 | Doubletime Rate |
| $ | 39,512.40 | 203 penalty per person (24 hrs. of work) |
| $ | 34.66 | Meal Break Penalty per violation |
| $ | 34.66 | Rest Break Penalty per violation |

| CLAIM | | ESTIMATED VALUE |
|---|---|---|
| Overtime/Doubletime | $ | 8,444,839.68 |
| Meal Break | $ | 351,868.32 |
| Rest Break | $ | 351,868.32 |
| *DAMAGES* | *$* | *9,148,576.32* |
| Interest on damages | $ | 1,829,715.26 |
| Waiting-time penalties | $ | 3,200,504.40 |
| | | |
| **TOTAL** | **$** | **14,178,795.98** |

These are, of course, estimates and assume Plaintiff will prevail to the greatest extent possible. There were substantial reasons to discount. (Karakalos Decl. ¶ 31.)

First, the above estimate included a substantial component ($3.2 million) of waiting-time penalties which are penalties awarded only where the failure to pay is willful. It remains unclear whether ARDENT's behavior warranted the imposition of waiting-time penalties because their actions for failure to adhere to California labor laws on the platforms may not have risen to the level of willfulness required under Labor Code section 203. (*Id.*)

Second, ARDENT vigorously disputes all Plaintiff's contentions and maintains that several factual and legal defenses are available to it. See, e.g., CM/ECF Doc. No. 27 [ARDENT Answer]. Specifically, ARDENT contends that Plaintiff, and the putative class, worked on offshore platforms affixed to the seabed of the Outer Continental Shelf, and as such California wage-and-hour laws do not apply to their employment. Regardless, ARDENT contends that it paid Plaintiff and the putative class compensation for all hours they worked while on the offshore platforms. Moreover, ARDENT's position is that some of putative class members spent their off-duty time during their hitch on the offshore platforms at their own request or for their own personal preference. ARDENT alleges the remaining putative class members, depending on the circumstances presented, were able to leave their platform during their hitch upon request. ARDENT further contends that Plaintiff and the putative class were provided all required meal and rest periods and were generally never called to duty during these periods of time and could do as they pleased during these times. If a Plaintiff or putative class member ever did not take a compliant meal or rest period, ARDENT contends that he did so at his own election. (*Id.*)

Third, ARDENT contends that class certification is not warranted, claiming that the workers on each platform were subject to different levels of control and different policies with respect to alarms, recreation, travel, working conditions, sleeping conditions, etc. (*Id.*)

Fourth, a large discount was given for the possibility that the United States Supreme Court could review the holding in the *Newton* Action (the case in which the

Ninth Circuit found that California labor law applied to the platforms).  Interestingly, just days after the parties signed their Memorandum of Understanding, the Supreme Court granted certiorari in the *Newton* Action. The matter is now scheduled for oral argument on April 16 with an expected ruling by June.  If the Supreme Court reverses the Ninth Circuit's holding in the *Newton* Action, this case will be valued at close to zero. (*Id.*)

Fifth, even if the *Newton* Action is affirmed, there is the inevitable legal hurdle of whether the Ninth Circuit's ruling is going to be applied retroactively.  It is true that several cases suggest that retroactivity is presumed.  See *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 94-99 (1993); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 534-544 (1991); *Griffith v. Kentucky*, 479 U.S. 314, 320-328 (1987).  However, there remains a chance that this Court could disagree and find that the Ninth Circuit's ruling is only prospective under *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971).  If so, the damages would be minimal, if not zero. (*Id.*)

Finally, even if California law applies on the platforms, there is no guarantee this Court would agree with Plaintiff's central theory – namely that all 24 hours per day are compensable under *Mendiola* and *Seymore*, *supra*.  If this Court did not agree that *Mendiola* and *Seymore* applied, this case would again be worth close to zero. (*Id.*)

## 2. Risks of Further Litigation Support Preliminary Approval

A "relevant factor" that courts must consider in contemplating a potential settlement is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010).  Thus, courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Id.*  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)

(quoting 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)).

While Plaintiff believes that class certification of this action would be appropriate regardless of whether there is a settlement, he also recognizes that ARDENT would be able to assert numerous arguments in opposition to a motion for class certification, including potential factual and legal defenses to Plaintiff's claims, as well as variations of company policies and practices at each of platforms serviced offshore. Arguments of this sort, if successful, could result in the failure of Plaintiff's motion for class certification. (Karakalos Decl. ¶ 31.)

Also, proceeding with litigation would impose ongoing, substantial additional expenditures of time and resources, including substantial additional preparation and discovery, such as depositions of experts, the presentation of percipient and expert witnesses at trial, voluminous documentary evidence and the preparation and analysis of expert reports. (Karakalos Decl. ¶ 20.) Further, the settlement was agreed to in light of Plaintiff's recognition that, should he surmount the various hurdles of prosecuting his case, ARDENT would undoubtedly appeal orders relating to class certification and/or the substantive merits of the case. (*Id.*) Further, the settlement was agreed to in light of ARDENT's recognition that, the Ninth Circuit's holding in the *Newton* Action was, by all statistical measures, likely to remain intact (certiorari was expected to be denied), but only days after a final settlement was reached was certiorari in fact granted. (*Id.*) It still remains unclear what the United States Supreme Court is likely to do with regard to the *Newton* Action – if it reverses (an 80% probability),[5] California law would no longer apply to the oil platform workers, and if it affirms (20% probability), California overtime and minimum wage laws would apply while a question would remain as to the

_____

[5] See https://www.americanbar.org/content/dam/aba/migrated/intelprop/magazine/LandslideJan2010_Hofer.authcheckdam.pdf

retroactivity of the Ninth Circuit's holding.  In short, there remain significant unknowns as to how this case would turn out for either side.

In contrast, resolving the case by means of an early settlement will yield a prompt, certain, and very substantial recovery for the Settlement Class members.  Such a result will benefit the parties and the court system.  It was and is Class Counsel's belief that this Settlement is a fair resolution of highly disputed claims and is a significant achievement in obtaining class-wide relief.  (*Id.* at ¶ 21.)

### 3.  Benefit to Settlement Class Members

The terms of the Settlement provide substantial monetary benefits to Settlement Class members and strongly support preliminary approval.  It creates an average net settlement payment of $14,828.89 for each of the approximately 102 Settlement Class members, which assumes a fee award of the maximum 33.33% of the Maximum Settlement Amount, a costs award of the maximum $20,000, administrative costs of $7,500, and a Service Award of the maximum $10,000. (Karakalos Decl. at ¶ 32, Ex. B.) This constitutes a substantial recovery that easily falls within the range of reasonableness for settlement approval.

To put it into statistical perspective, there are only 11 individuals making less $0 - $1,000; 17 individuals making $1,000 - $3,000; 19 individuals making $3,000 - $5,000; 8 individuals making $5,000 - $10,000; 11 individuals making $10,000 - $15,000; 10 individuals making $15,000 - $20,000, 6 individuals making $20,000 - $25,000; and 20 individuals making over $25,000. A not insignificant 6% of the Settlement Class members are making over $50,000, with one individual even expecting over $113,000,00. (Karakalos Decl. at ¶ 33, Ex. B.)   The Settlement Class members are receiving far more than a *de minimis* reward.

Moreover, considering that 53 of the Settlement Class members previously signed release packets in exchange for a total of $60,000, this additional average recovery here is far in excess of what they previously received. On average, the Settlement Class members who signed releases prior to the Settlement received $1,132.08 ($60,000/53).

The average net settlement under this Settlement ($14,828.89) is more than 13 times greater, and in one case, one-hundred times greater. (*Id.* at ¶ 34.)

In view of the uncertainties that faced Plaintiff, including ARDENT's potential appeal of any rulings on class certification and/or liability, and the outcome of the *Newton* Action, this is believed to be an excellent monetary result. (*Id.* at ¶ 32.)

### 4. The Settlement is the Product of Informed, Non-Collusive Negotiation

The Settlement is the result of intensive arms-length negotiation, including a mediation session as well as extensive negotiations between the parties on their own. (Karakalos Decl. at ¶ 5) Class Counsel conducted confirmatory discovery as part of preparing for and completing settlement negotiations. (Karakalos Decl. at ¶¶ 10-14.) The time and effort spent on settlement negotiations, as well as mediation with Michael E. Dickstein, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion. *See Hanlon*, 150 F.3d at 1029.

### 5. The Settlement Agreement Has No Obvious Deficiencies

The Court must next consider "whether there are obvious deficiencies in the Settlement Agreement." *Deaver*, 2015 WL 4999953, at *7. Here, there are no obvious deficiencies. Settlement Class members will release only those claims that could arise from their alleged violations. (Settlement at ¶ 2(A).) The parties have also carefully constructed a formula for payments to Settlement Class members to ensure an equitable distribution of the settlement funds based on the total number of overnights they spent on the platforms.

No unclaimed funds will revert to ARDENT; rather they will be held for the Settlement Class members in the State of California Unclaimed Wages fund. (Settlement at ¶ 3(D).) Additionally, the Class Notice provides all required information to Settlement Class members in an easy-to-read format, as discussed above. (Settlement, Exs. B-D.)

The attorney's fee provision permits Plaintiffs' Counsel to apply for fees and costs not to exceed 33.33% of the Maximum Settlement Amount; the Settlement is not contingent upon the Court approving Counsel's application. (Settlement at ¶ 3(D)(4).)

28

In addition, the Settlement does not unfairly grant preferential treatment to any Class Member; as stated, payments to Settlement Class members will be based on the number of overnights they spent on the platforms during the class period.  The agreed upon enhancements for Plaintiffs are in line with, if not less than, awards in other wage-and-hour cases in California district courts.  *See Thomas v. TD Ameritrade, Inc.*, No. C08-02397 WDB, 2009 WL 8730175, at *2 (N.D. Cal. Sept. 29, 2009) ($15,000 awarded); *Cordy v. USS-POSCO Industries*, No. 12–cv–00553–JST, 2014 WL 1724311, at * 3 (N.D. Cal. Apr. 28, 2014) ($8,000 awarded).

### 6.  *Counsel Have Determined that the Settlement Is Appropriate and Fair*

When deciding whether to give preliminary approval to a settlement, the Court is entitled to give considerable weight to the opinion of counsel.  *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988).  Here, Class Counsel are experienced in wage-and-hour class actions, having been certified by numerous state and federal courts as adequate and competent class counsel in wage and hour class actions. (Strauss Decl. at ¶¶ 6-15; Karakalos Decl., ¶¶ 35-41.)  Counsel for ARDENT similarly have extensive experience based upon a long track record in complex class actions.  They have vigorously defended ARDENT throughout this action and would likely continue to do so had the case not settled. (Karakalos Decl. at ¶ 20.)  Counsel all share the view that the proposed Settlement is fair, reasonable and adequate and in the best interests of the Settlement Class members.

### 7.  *The Proposed Class Notice Should Be Approved*

Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  Newberg on Class Actions, § 8.32, at 262-68.  The notice must also indicate an opportunity to opt out, that the judgment will bind all Settlement Class members who do not opt out, and

1  that any member who does not opt out may appear through counsel. Fed. R. Civ. P.

2  23(c)(2).

3       Plaintiff requests approval of the proposed Class Notice. (Settlement, Exs. B-D.)

4  The Class Notice meets all of the requirements of Rule 23(e): it identifies the Plaintiff

5  and Defendant and describes the lawsuit and the Class in a straightforward manner;

6  succinctly describes the essential terms of the proposed Settlement, and identifies all

7  parties against whom claims are being released; provides Settlement Class members with

8  information on how to opt-out of the Class or to object to the Settlement and provides all

9  applicable deadlines for such action; and informs Settlement Class members that if they

10 do not exclude themselves from the Class, and the Settlement is approved, they will be

11 bound by the resulting judgment.

12      In addition, the Class Notice instructs Settlement Class members to contact Class

13 Counsel or the Claims Administrator to obtain more detailed information and provides

14 information regarding counsel's fee and expense application. *Id*. Thus, the Class Notice

15 will provide the necessary information for Settlement Class members to make an

16 informed decision regarding the proposed Settlement.

17            **8.  *The Method of Sending Notice Satisfies Due Process***

18      As a general rule, due process requires individualized notice where the names and

19 addresses of class members "may be ascertained through reasonable effort." *Eisen v.*

20 *Carlisle & Jacquelin*, 417 U.S. 156, 173, 177 (1974).  As courts have repeatedly held,

21 notice by direct mail or e-mail and publication are often the "best practicable" notice

22 under the circumstances.  *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

23      Here, the proposed Settlement provides for direct mail notice to each Class

24 Member based on current contact information provided by ARDENT.  If a notice is

25 returned as undeliverable, the Claims Administrator will search for a more current

26 address, including conducting a skip-trace search. (Settlement at ¶ 9(F).)  The notice

27 procedure here more than sufficiently satisfies all due process requirements.

28 //

**NOTICE OF PLAINTIFF'S MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### *9.  The Court Should Appoint CPT Group, Inc. as Claims Administrator*

The parties propose that, subject to the Court's approval, CPT Group, Inc. administer the Settlement.  CPT Group, Inc. has served as the Claims Administrator for many of Class Counsel's other cases and has performed their administration professionally and efficiently.  (Strauss Decl. at ¶ 20; Karakalos Decl. at ¶ 26.)

### D. Proposed Schedule for Remaining Procedures

Plaintiff proposes the following schedule for final approval assuming preliminary approval is granted on March 21, 2019:

| PRELIMINARY APPROVAL HEARING | March 21, 2019 |
|---|---|
| ARDENT to provide Class contact information (10 business days from entry of order) – Settlement at ¶ 9(A) | April 4, 2019 |
| CPT Group to mail Notice Packets (10 business days from receipt of information) – Settlement at ¶ 9(B) | April 18, 2019 |
| Settlement Class members to possibly opt-out (45 calendar days from mailing) – Settlement at ¶ 9(C) | June 2, 2019 |
| Motion for final approval and attorney fees/costs due (proposed as 40 days in advance of hearing) | June 19, 2019 |
| Settlement Class members to submit objections (20 days before Final Approval Hearing) – Settlement at ¶ 9(D) | July 9, 2019 |
| FINAL APPROVAL HEARING (proposed) | July 29, 2019 |

## VII.  CONCLUSION

For the reasons stated hereinabove, Plaintiff, on behalf of herself and the class of oil platform workers, respectfully requests the Court to grant the within motion for preliminary approval of class action settlement.

Dated:  February 19, 2019　　　　**STRAUSS & STRAUSS, APC**

　　　　　　　　　　　By: /s/_____
　　　　　　　　　　　　　Aris E. Karakalos
　　　　　　　　　　　　　Attorneys for Plaintiffs and the Class

31