Michael A. Strauss (State Bar No. 246718)
mike@strausslawyers.com
Aris E. Karakalos (State Bar No. 240802)
aris@strausslawyers.com
Andrew C. Ellison (State Bar No. 283884)
andrew@strausslawyers.com
STRAUSS & STRAUSS, APC
121 N. Fir St., Suite F
Ventura, California 93001
Telephone: (805) 641.6600
Facsimile: (805) 641.6607

Attorneys for Plaintiff Edgar Orozco and the
Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR OROZCO, an individual, for himself and those similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ARDENT COMPANIES, INC., a Louisiana corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No.  2:18-CV-02763-GW (SSx)<br><br>*Assigned to: Hon. George H. Wu*<br><br>**PUTATIVE CLASS ACTION**<br><br>**NOTICE OF MOTIONS AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CM/ECF DOC. NO. 34**<br><br>HEARING:<br>Date:　Thursday, July 18, 2019<br>Time:　8:30 a.m.<br>Place:　Courtroom 9D, 9th Floor<br>　　　　350 West 1st Street<br>　　　　Los Angeles, CA 90012 |

1

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR PRELIMINARY APPROVAL**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, July 18, 2019, at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable George H. Wu, at the First Street Courthouse, 350 West 1st Street, Courtroom 9D, 9th Floor, Los Angeles, California 90012-4565, Plaintiff Edgar Orozco ("Plaintiff") will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order:

1. Granting preliminary approval of the proposed settlement upon the terms and conditions set forth in the Stipulation of Class Action Settlement and Release (hereinafter referred to as the "Settlement" or "Agreement");

2. Certifying the following class for settlement purposes only: "All current and former hourly employees of Defendant Ardent Companies, Inc., who, at any time from February 23, 2014 through the date of preliminary approval ("Class Period"), worked on oil platforms off the California coast on the Outer Continental Shelf (consisting of submerged lands, subsoil, and seabed more than three nautical miles off the mainland) for periods of 24 hours or more, stayed offshore overnight, and whose offshore shifts or hitches began from and ended on California soil." ("Settlement Class");

3. Approving the proposed manner of mailing of the Notice of Settlement set forth in the Settlement and the size and contents of the Notice of Proposed Class Action Settlement;

4. Appointing CPT Group, Inc. ("CPT") as the Claims Administrator;

5. Appointing the law firm of Strauss & Strauss, APC as Class Counsel and Plaintiff Edgar Orozco as Class Representative; and

6. Setting a final fairness hearing to consider the fairness, reasonableness and adequacy of the proposed Settlement as well as the award of attorney's fees and costs to Class Counsel and Service Award to the Class Representative (Plaintiff proposes a hearing of Thursday, November 21, 2019 at 8:30 a.m.).

In the alternative, Plaintiff moves for reconsideration of the Court's Order (CM/ECF Doc. No. 34) Denying Plaintiff's Motion for Preliminary Approval of Class Action Settlement under Fed. R. Civ. Proc. 60(b) and Central District Local Rule 7-18(b) on the grounds that there are new material facts presented to Plaintiff's counsel following the Court's previous ruling on preliminary approval.  Namely, information relating to the number of workers still employed by ARDENT with an arguably viable claim for waiting-time penalties.  The court denied the prior motion without prejudice, but since Plaintiff is seeking approval of the same settlement agreement, without alteration or the inclusion of a sub-class, this motion is also being brought as a motion for reconsideration.

These Motions are based on this Notice of Motions and Motions; the Memorandum of Points and Authorities; the Declarations of Aris E. Karakalos, Michael A. Strauss and Edgar Orozco, filed concurrently herewith or in conjunction with the previously filed motion (CM/ECF Docket No. 31), all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

These motions are made following the conference of counsel pursuant to L.R. 7-3, which took place on May 15, 2019 and several days thereafter.

Dated:  July 13, 2019                    **STRAUSS & STRAUSS, APC**

                                         By: /s/_____
                                             Aris E. Karakalos
                                             Attorneys for Plaintiffs and the Putative Class

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   STATEMENT OF FACTS......................................................................2

III.  PROCEDURAL BACKGROUND..........................................................3

IV.   SETTLEMENT PROCESS ....................................................................6

V.    SUMMARY OF THE PROPOSED SETTLEMENT.............................6

VI.   LEGAL ARGUMENT............................................................................7

  A.  PLAINTIFF'S LEGAL THEORIES. ......................................................7

    1.  Rest Period Claim.........................................................................8

    2.  Meal Period Claim. .....................................................................10

    3.  Unfair Competition Claim...........................................................11

    4.  Waiting-Time Penalty Claim .......................................................12

    5.  FLSA claims.................................................................................13

    6.  Injunctive Relief..........................................................................14

  B.  CERTIFICATION OF THE CLASS IS APPROPRIATE ......................14

    1.  The Settlement Class Is Sufficiently Numerous ...........................14

    7.  Questions of Law or Fact are Common to the Class ....................15

    8.  The Class Representatives' Claims Are Typical of the Class .........16

    9.  The Class Representative and His Counsel Will Fairly and Adequately Protect
        the Settlement Class Members' Interests. ...................................16

    10. Common Questions of Law and Fact Predominate....................17

    11. A Class Action is Superior to Alternative Methods. ..................18

  C.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AS ALL FAIRNESS
      FACTORS UNDER FRCP 23(E)(2) HAVE BEEN MET. .............................18

    1.  The Class Representatives and Class Counsel Have Adequately Represented
        the Class [FRCP 23(e)(2)(A)].................................................19

    2.  The Settlement Was Negotiated at Arm's Length [FRCP 23(e)(2)(B)]. ...........19

i

3.  *The Relief Provided for the Class is Adequate [FRCP 23(e)(2)(C)].* ............... *19*

    i.  The Cost, Risk, and Delay of Trial and Appeal [FRCP 23(e)(2)(C)(i)]. ... 20

    ii.  The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims [FRCP 23(e)(2)(C)(ii)]. ........................................................................ 21

    iii.  The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment [FRCP 23(e)(2)(C)(iii)]. .......................................... 21

    iv.  Any Agreement Required to be Identified Under Rule 23(e)(23) [FRCP 23(e)(2)(C)(iv)]. ........................................................................ 21

4.  *The Settlement Treats Class Members Equitably Relative to Each Other [FRCP 23(e)(2)(D)].* ........................................................................ 22

D.  THE PROPOSED CLASS NOTICE SHOULD BE APPROVED ......................... 22

E.  THE COURT SHOULD APPOINT CPT GROUP, INC. AS CLAIMS ADMINISTRATOR ..... 22

F.  PROPOSED SCHEDULE FOR REMAINING PROCEDURES ............................. 22

**VII.  DENYING THIS MOTION WOULD INVARIABLY HARM THE CLASS.** ............................................................................... **23**

**VIII.  RECONSIDERATION IS APPROPRIATE.** ................................... **23**

**IX.  CONCLUSION** ................................................................... **24**

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Acmchem Prod., Inc. v. Windsor*,

 521 U.S. 591, 623 (1997) ...................................................................................... 14, 17

*Avilez v. Pinkerton Gov't Servs.*,

 286 F.R.D. 450, 465 (C.D. Cal. 2012) ........................................................................ 12

*Bay Ridge Operating Co. v. Aaron*,

 334 U.S. 446, 461 (1948) .............................................................................................. 13

*Betts v. Reliable Collection Agency*,

 659 F.2d 1000, 1005 (9th Cir. 1981) .......................................................................... 15

*Brinker Rest. Corp. v. Superior Court*,

 53 Cal. 4th 1004 ...................................................................................................... 9, 10

*Busk v. Integrity Staffing Sols., Inc.*,

 713 F.3d 525, 531 (9th Cir. 2013) .............................................................................. 10

*Class Plaintiffs v. City of Seattle*,

 955 F.2d 1268, 1276 (9th Cir. 1992) .......................................................................... 18

*Cortez v. Purolator Air Filtration Products Co.*,

 23 Cal.4th 163 (2000) ................................................................................................... 11

*Deaver v. Compass Bank*,

 No. 13–cv–00222–JSC, 2015 WL 4999953, at *9 (N.D. Cal. 2015) ..................... 20

*Durell v. Sharp Healthcare*,

 183 Cal.App.4th 1350 (2010) ..................................................................................... 11

*Finder v. Leprino Foods Co.*,

 No. 1:13–CV–2059 AWI–BAM, 2015 WL 1137151 (E.D. Cal. Mar. 12, 2015) 12

*Hanlon v. Chrysler Corp.*,

 150 F.3d 1011, 1019 (9th Cir. 1998) ................................................................ 14, 15, 16, 17

*Havrilla v. United States*,

 125 Fed. Cl. 454, 464 (2016) ...................................................................................... 11

*In re Tableware Antitrust Litig.*,

    484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) .......................................................... 1

*Johnson v. Am. Credit Co.*,

    581 F.2d 526, 532 (5th Cir. 1978) .................................................................. 15

*Keegan v. Am. Honda Motor Co.*,

    284 F.R.D. 504, 522 (C.D. Cal. 2012) ............................................................ 15

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234, 1238 (9th Cir. 1998) .............................................................. 18

*Mamika v. Barca*,

    68 Cal. App. 4th 487, 494 (1998) .................................................................. 12

*Mattel, Inc. v. MCA Records, Inc.*,

    296 F.3d 894, 908 (9th Cir. 2002 ................................................................... 12

*Nordstrom Comm'n Cases*,

    186 Cal. App. 4th 576, 584 (2010) ................................................................ 13

*O'Connor v. Boeing N. Am., Inc.*,

    184 F.R.D. 311, 319 (C.D. Cal. 1998) ........................................................... 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

    688 F.2d 615, 625 (9th Cir. 1982) .................................................................. 19

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,

    587 U.S. ___, 2019 WL 2412907 (Jun. 10, 2019).................................. 4, 8, 20

*Perez v. Wells Fargo & Co.*,

    75 F. Supp. 3d 1184, 1192 (N.D. Cal. 2014) ................................................... 9

*Retired Chicago Police Ass'n v. City of Chicago*,

    7 F.3d 584, 599 (7th Cir. 1993) ..................................................................... 15

*Rodriguez v. Hayes*,

    591 F.3d 1105, 1124 (9th Cir. 2010) .............................................................. 16

*Rutti v. Lojack Corp.*,

    2012 WL 3151077, at *6 (C.D. Cal. July 31, 2012)....................................... 18

*Safeway v. Superior Court of Los Angeles County*,

    238 Cal. App. 4th 1138, 1155-56 (2015) ............................................................... 11

*Saunders v. Superior Court*,

    27 Cal.App.4th 832 (1994) ..................................................................................... 11

*Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*,

    873 F.3d 420, 425 (3d Cir. 2017) ............................................................................ 9

*Thomas v. TD Ameritrade, Inc.*,

    No. C08-02397 WDB, 2009 WL 8730175, at *2 (N.D. Cal. Sept. 29, 2009) ...... 22

*Wright v. Linkus Enters., Inc.*,

    259 F.R.D. 468, 473 (E.D. Cal. 2009) ................................................................... 18

**STATUTES**

Business and Professions Code section 17200 ..................................................... 8, 11

Business and Professions Code section 17208 ......................................................... 11

Labor Code section 201 ............................................................................................ 12

Labor Code section 202 ............................................................................................ 12

Labor Code section 203 ....................................................................... 4, 12, 13, 14, 20

Labor Code section 226.7 ..................................................................................... 9, 11

Labor Code section 512 ............................................................................................ 10

29 U.S.C. § 207 ........................................................................................................ 13

43 U.S.C. § 1331 ........................................................................................................ 7

43 U.S.C. § 1333 ........................................................................................................ 7

**RULES**

Federal Rule of Civil Procedure 23 .................................................................. *passim*

Federal Rule of Civil Procedure 60 ..................................................................... 2, 23

Local Rule 7-18 .................................................................................................... 2, 23

**TREATISES**

Manual for Complex Litigation (4th ed. 2004) § 21.632 ......................................... 14

**REGULATIONS**

29 C.F.R. § 778 ..................................................................................................20

29 C.F.R. § 778.116 .........................................................................................13

29 C.F.R. § 785.18 ...........................................................................................10

29 C.F.R. § 785.19 ...........................................................................................11

8 Cal. Code Regs. § 11160 ..........................................................................9, 10

8 Cal. Code Regs. § 13520 ...............................................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Edgar Orozco ("Plaintiff") moves this Court for an order preliminarily approving a proposed Stipulation of Class Action Settlement and Release (hereinafter sometimes referred to as the "Settlement" or "Agreement") entered by Plaintiff and Defendant Ardent Companies, Inc. ("ARDENT"). A true and correct copy of the Settlement and its Exhibits A-D including of a redacted overnight log and proposed Notice Packet, is attached to the concurrently filed Declaration of Aris E. Karakalos ("Karakalos Decl.") as <u>Exhibit A</u>.

The Settlement was achieved with the assistance of mediator Michael E. Dickstein of Dickstein Dispute Resolution, who oversaw a mediation in San Francisco, as well as a series of follow up communications spanning several weeks, which ultimately resulted in settlement and a substantial benefit to the 102 Settlement Class members.  All 102 Settlement Class members are being treated exactly the same, despite the fact that two (2) have been employed by ARDENT throughout the statutory period without interruption and are still employed by ARDENT.

Pursuant to the Settlement, the Maximum Settlement Amount is Two-Million Three-Hundred Twenty-Five Thousand Dollars ($2,325,000.00), inclusive of all payments to Settlement Class members, Class Counsel fees up to 33.33% of the common fund ($775,000.00) and expenses not to exceed $20,000, a Class Representative Service Award not to exceed $10,000, and claims administration costs not to exceed $7,500.

The Settlement readily satisfies the standard for preliminary approval – it is within the range of possible approval to justify sending notice to Settlement Class members and scheduling final approval proceedings. *See In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Accordingly, Plaintiff seeks an order: (1) granting preliminary approval of the Settlement; (2) certifying the Settlement Class for settlement purposes only; (3) approving the manner and forms of giving notice to the Class; (4) appointing Strauss & Strauss, APC, to represent the Settlement Class as Class

1

Counsel; (5) appointing Plaintiff Edgar Orozco as Class Representative; (6) appointing
CPT Group as Claims Administrator; and (7) establishing a timetable for final approval
of the Settlement.

Plaintiff's previously sought preliminary approval, but this Court denied the
motion without prejudice based on the fact that no information had been furnished
relating to how many of the 102 members of the Settlement Class are currently employed
by ARDENT.  At the time of the hearing on said motion, neither party had the answer.
The parties have since resolved the issue and concluded that there are only six current
employees working for ARDENT, but only two of them have continuously been
employed by ARDENT (without being subject to interim termination following the
closure of operations on the OCS platforms).

For reasons explained below, Plaintiff renews his request for preliminary approval
of the Settlement under the same terms as before, without the creation of a subclass and
without disparate treatment of the two individuals whose waiting-time penalty has not
yet ripened.  The creation of such a subclass (of only two individuals) would run contrary
to the law requiring numerosity for each subclass.

In the alternative, Plaintiff moves for reconsideration of the Court's Order
(CM/ECF Doc. No. 34) Denying Plaintiff's Motion for Preliminary Approval of Class
Action Settlement under Fed. R. Civ. Proc. 60(b) and Central District Local Rule 7-18(b).
Here, the motion is based on new material facts presented to Plaintiff's counsel following
the court's previous ruling on preliminary approval.  Namely, information relating to the
number of workers still employed by ARDENT with an arguably viable claim for
waiting-time penalties.  The court denied the prior motion without prejudice, but since
Plaintiff is seeking approval of the same settlement agreement, without alteration or the
inclusion of a sub-class, this motion is also being brought as a motion for reconsideration.

## II.    STATEMENT OF FACTS

Plaintiff incorporates by reference the Statement of Fact section of his motion for
preliminary approval, CM/ECF document number 31, pages 2 through 3.  *See also*

2

1  CM/ECF Document No. 34 at 2.

2  **III.   PROCEDURAL BACKGROUND**

3         Plaintiff incorporates by reference the Procedural Background section of his
4  motion for preliminary approval, CM/ECF document number 31, pages 3 through 5. *See*
5  *also* CM/ECF Document No. 34 at 2.

6         At the initial hearing on preliminary approval, this Court did not address the merits
7  of the Settlement itself – rather, the Court focused exclusively on shortcomings relating
8  to the conditional certification of the class.  The Court raised concerns over why the
9  Settlement does not provide for a sub-class of current employees of Defendant that
10 appeared to not have a waiting-time penalty claim – pointing out that Plaintiff, as a former
11 employee, has an additional claim for waiting-time penalties that is not available to
12 current employees.  The Court denied Plaintiff's motion without prejudice and instructed
13 the parties to address the sub-class issue and/or the valuation of the waiting-time penalty
14 claim in a subsequent motion for preliminary approval. In the Court's own words:

15         So, in other words, this severance claim, is it applicable to all of the class
16         members in the same way or is it a situation where there are some that will
           have it and some that won't because if there are some that will have it and
17         some that won't, then I have this problem. If you are saying to me that all of
           the class members except for maybe one have it, then I can understand
18         maybe at that point that the fact that you are attempting to treat everybody
           exactly the same.

19 See transcript of the April 25 Hearing on Motion for Preliminary Approval, a true and
20 correct copy of which is attached to Karakalos Decl. as Exhibit D, 7:11-20.

21        Other than questions relating to conditional class certification, the Court seemed
22 to praise the Settlement's fairness, at least in terms of payout equity:

23         And, also, I basically don't have a problem with the amount of money
24         because I think the amount of money that the individual class members are
           getting is significant. So it is not a situation where they are getting chump
25         change. I agree with you a hundred percent on that. It is just this problem
           about this particular aspect.

26 Karakalos Decl. at Exhibit D, 9:6-12.

27        Thereafter the parties met and conferred on "this particular aspect" of how many
28 class members are currently working for ARDENT. According to ARDENT's records,

only two individuals – Rene Duran and Martin Jimenez – have continuously worked and are currently working for ARDENT.  See post-April 25 email exchanges between Joshua Kienitz and Aris Karakalos, true and correct copies of which are attached to Karakalos Decl. as Exhibit E.  ARDENT indicated that it unwilling to distinguish between former and current employees and/or allocate additional sums to the formers for waiting-time penalties because ARDENT disputed the appropriateness of such penalties on any level.  Karakalos Decl., Exhibit E.  Plaintiff agrees that equal treatment under the circumstances is appropriate, especially considering the "good faith" dispute over whether Labor Code 203 applies, as discussed infra at Section IV(A)(5).

Instead of agreeing to the filing of this renewed motion addressing the subclass issue (which Plaintiff believes is a bad-faith breach of paragraph 17 of the Agreement), ARDENT seized on the opportunity to try and unwind the Agreement.  With the benefit of 20/20 hindsight vision, ARDENT regrets executing the Agreement and is employing bad-faith tactics to withdraw from the Agreement. ARDENT is unwilling to live with the then-calculated gamble it made on the eve the United States Supreme Court was scheduled to grant or deny certiorari in the controlling *Newton* Action.  ARDENT gambled that certiorari was unlikely to be granted, and was thus quick to pen this Settlement.  In reality, certiorari was granted – and the *Newton* Action was reversed on June 10, 2019.  *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. ___, 2019 WL 2412907 (Jun. 10, 2019) ("*Parker Drilling*").  Plaintiff and putative class should not pay the price for ARDENT's regrets.

The parties attended a status conference on May 30 where they brought this dispute to the Court's attention.  When this Court asked about it, ARDENT's response was:

> "Our position is under Section 1 of the settlement agreement, which says: 'If, for any reason, the settlement agreement is not approved or terminated in whole or in part, the conditional agreement to class certification will be inadmissible or have no effect.'"

See transcript of the May 30 Status Conference, a true and correct copy of which is attached to Karakalos Decl. as Exhibit F, 5:12-17.

But ARDENT's reliance on paragraph 1 is misplaced.  That provision does not give ARDENT authority to unilaterally terminate the Agreement; it merely confirms a reversion to the status quo for class certification purposes, not for an unwinding of the Agreement:

> The Parties agree that certification for purposes of settlement is not an admission that class certification is proper under Rule 23 of the Federal Rules of Civil Procedure. If for any reason this Settlement Agreement is not approved or is terminated, in whole or in part, this conditional agreement to class certification will be inadmissible and will have no effect in this matter or in any claims brought on the same or similar allegations, and the Parties shall revert to the respective positions they held prior to entering into the Settlement Agreement.

Karakalos Decl., Exhibit A, ¶ 1 of Settlement.  Nor can ARDENT rely on paragraph 11 of the agreement, which states, "If Final Approval does not occur, the Parties agree that this Settlement Agreement is void …" Karakalos Decl., Exhibit A, ¶ 11 of Settlement. This provision makes it clear that only where "final" approval is denied would the Agreement be void.  It is the only place in the entire Settlement where the term "void" is found.  Had the parties intended to make the Agreement voidable upon denial of *preliminary* approval, this provision would have stated as much. It does not.

Even assuming paragraph 1 gives ARDENT the ability to back out of the settlement (which it does not), the condition precedent – the non-approval or termination of the Settlement Agreement – has not occurred.  The Court did not disapprove of the settlement; it merely denied the motion for preliminary approval without prejudice and asked the parties for clarification as to the particulars of the waiting-time penalty claim. At the May 30 status conference, in response to ARDENT's explanation of its position that the settlement was not approved, this Court reacted with a level of confusion shared only by Plaintiff's counsel, stating:

> Well, let me just stop though. Again, my ruling did not indicate that the settlement was off or that even the class could not be certified. I pointed out a particular problem in regards to the way in which – well, not the way, but

the fact that there was a portion of the settlement in regards to the relief that
was being sought, that there was a question as to whether or not the named
class representative could be seeking that aspect, because he was an
individual who was already terminated.

Karakalos Decl., Ex. F, 5:18-6:1.  At the conclusion of the status conference, the Court
urged the parties: "…read my – the ruling that I made on April 15.  I think I made myself
clear insofar as what the deficiency was.  And obviously, the deficiency was not
devastating because I wouldn't have given the plaintiff leave to – sorry, I wouldn't have
made the denial without prejudice.  I would have made it with prejudice if there was a
problem that could not be overcome."  Karakalos Decl., Ex. F, 9:16-22.  Quite clearly,
according to the Court's own understanding, the settlement has not been disapproved and,
therefore, the conditions precedent for termination of the agreement have not occurred.

## IV.    SETTLEMENT PROCESS

    Plaintiff incorporates by reference the Settlement Process section of his motion
for preliminary approval, CM/ECF document number 31, pages 5 through 6.  *See also*
CM/ECF Document No. 34 at 2.

## V.    SUMMARY OF THE PROPOSED SETTLEMENT

    Plaintiff incorporates by reference the Summary of the Proposed Settlement
section of his motion for preliminary approval, CM/ECF document number 31, pages 7
through 9.  *See also* CM/ECF Document No. 34 at 2-3.  Plaintiff supplements his previous
motion's "Scope of Release" section on page 9 as follows:

    All the releases are exactly the same.  The releases relate to claims arising entirely
on the OCS platforms, and have nothing to do with work performed on California's
mainland.  Section 1 of the Agreement makes it clear: "Covered Workdays does not
include days spent by the Settlement Class working in other areas serviced by Defendant
other than the OCS oil platforms, the mainland ports from which the Settlement Class
departed and returned to service the OCS oil platforms, and the California waters
travelled on to and from the OCS oil platforms." Karakalos Decl., <u>Exhibit A</u>, p. 2.

1    This is just one more reason why a subclass for individuals still employed by
2    ARDENT is inappropriate – because those individuals have already stopped working on
3    OCS platforms (along with every other member of the Settlement Class).  Thus, to the
4    extent these two individuals make a claim for waiting-time penalties when they separate
5    from ARDENT in the future, they will have already released their claim to these penalties
6    insofar as they stem from unpaid wages earned on OCS platforms.  In essence, as a result
7    of ARDENT having ended all OCS platform operations in the summer of 2018, the
8    Settlement Class release covers the exact same claims for everyone (including current
9    employees of ARDENT).

## VI.    LEGAL ARGUMENT

### A. Plaintiff's Legal Theories.

12    The claims asserted by Plaintiff primarily arise from work performed on the oil
13    platforms located more than three miles off the California coast, in an area known as the
14    Outer Continental Shelf ("OCS").  Plaintiff's claims all arise under California law, which
15    Plaintiff alleged was adopted as surrogate federal law under the Outer Continental Shelf
16    Lands Act, 43 U.S.C. § 1331 *et seq.* ("OCSLA").  OCSLA extends federal law to the
17    subsoil and seabed of the OCS and all attachments thereon.  43 U.S.C. § 1333(a)(1).
18    OCSLA also deems the adjacent State's laws to be surrogate federal law "[t]o the extent
19    that they are applicable and not inconsistent with" other federal law.  43 U.S.C. §
20    1333(a)(2)(A).

21    In Plaintiff's previous motion for preliminary approval (Doc. No. 31), he set forth
22    his legal theories as they were at the time of the settlement and the hearing on the motion
23    for preliminary approval, when the Ninth Circuit's decision in *Newton* was the governing
24    law.  Under *Newton*, California state wage-and-hour laws were both applicable and not
25    inconsistent with federal law and, therefore, they were adopted as surrogate federal law
26    on the OCS.  Rather than re-state those now-outdated legal theories, which were relevant
27    to the settlement of this case, because the parties reached their settlement on the eve of

the Supreme Court's grant (or denial) of certiorari, Plaintiff incorporates by reference pages 9 through 13 of CM/ECF Document Number 31 filed on March 22, 2019.

On June 10, 2019, the Supreme Court issued *Parker Drilling*, which reversed the Ninth Circuit's decision in *Newton*. In so doing, the Supreme Court articulated a new standard for when state laws apply to work performed on the OCS: "[W]here federal law addresses the relevant issue, state law is not adopted as surrogate federal law on the OCS." The Supreme Court applied this new standard to plaintiff Newton's overtime and minimum wage claims and held that, because federal laws addressed minimum wage and overtime protections, California minimum wage and overtime laws could not be adopted as federal law on the OCS. The Court did not address plaintiff Newton's other state law claims, which included California Labor Code-based claims for meal periods, waiting-time penalties, and PAGA penalties and a claim for unfair competition under Business and Professions Code section 17200. Rather, the Court remanded the case to the trial court for further proceedings consistent with its opinion.

Under *Parker Drilling*, therefore, Plaintiff Orozco's claims for minimum wages and overtime would fail as a matter of law. It is an open question, however, as to the fate of his other claims, as no court has yet applied *Parker Drilling*'s brand-new test. Plaintiff anticipates that all of his claims – exclusive of his claims for minimum wage and overtime wages and those predicated thereon, such as his claim under section 17200 and PAGA penalties – will survive under the *Parker Drilling* test:

### 1. *Rest Period Claim.*

California Industrial Welfare Commission Wage Order 16-2001 ("Wage Order 16") requires employers to provide duty-free rest periods as follows:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. Nothing in this provision shall prevent an employer from staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods to coincide with breaks in the flow of work that occur in the course of the workday. The

8

> authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof.

8 Cal. Code Regs. § 11160(11)(A).  Interpreting a similar rest period standard set forth in Wage Order 4-2001, the California Supreme Court held that an employee working a shift of between 10 and 14 hours must be provided with *three* 10-minute rest periods. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1029 (2012).

An employer who fails to provide rest periods in accordance with the applicable wage order "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the ... rest ... period is not provided."  Lab. Code § 226.7(c).

Plaintiff alleges that ARDENT is liable for rest period premiums because it did not provide Plaintiff and the putative class members with a 10-minute, duty-free rest period for every four hours worked.  First Amended Complaint, CM/ECF Doc. No. 26 at 11-12. Given that the putative class members worked shifts of 12 hours, ARDENT was required to provide them with *three* 10-minute rest periods.  But ARDENT only provided the putative class members with *two* rest periods.  Declaration of Edgar Orozco in Support of Revised Motion for Preliminary Approval of Class Action Settlement or, in the Alternative, Motion for Reconsideration of Order Denying Motion for Preliminary Approval of Class Action Settlement, CM/ECF Doc. No. 34 (Orozco Decl.) at ¶ 10.

Plaintiff's rest period claim survives the *Parker Drilling* analysis because federal law does not "address the relevant issue" of whether workers must be provided with rest periods.  The Fair Labor Standards Act (FLSA) imposes no rest period requirements. *Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 425 (3d Cir. 2017); *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1192 (N.D. Cal. 2014) ("[T]he FLSA does not include a provision authorizing an employee to bring a civil action for failure to provide paid rest breaks.").  One of the FLSA's implementing regulations does discuss rest periods, but only in the context of whether rest periods, *if provided*, must be paid for as working time:  "Rest periods of short duration, running from 5 minutes to

9

about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time." 29 C.F.R. § 785.18. Here, the relevant issue is not whether the putative class was not compensated for their rest periods – they were. Rather, the relevant issue is whether ARDENT provided three rest periods for putative class members' 12-hour shifts. Because federal law does not address this relevant issue, Plaintiff's rest period claim survives the *Parker Drilling* analysis.

### 2. Meal Period Claim.

The California Labor Code and Wage Order 16 establish the parameters of lawful meal periods in the state. An employer may not employ an employee for a work period of more than five hours per day without providing the employee with an uninterrupted meal period of not less than thirty minutes. Lab. Code § 512(a); 8 Cal. Code Regs. § 11160(10)(A). "[Labor Code] section 512 requires a first meal period no later than the end of an employee's fifth hour of work." *Brinker*, 53 Cal. 4th at 1041. Plaintiff alleges that ARDENT failed to abide by California's meal period laws by not meal periods for every five-hour work period. First Amended Complaint, CM/ECF Doc. No. 26 at 11-12. ARDENT provided meal periods to Plaintiff and the putative class, but not until *after the* end of the employees' fifth hour of work; employees who started working at 6 a.m. received their meal period at 12:00 p.m., which was the end of their sixth hour of work. Orozco Decl. at ¶ 10.

As with rest periods, no federal law "addresses the relevant issue" of whether employees must be provided with meal periods for every five hours worked. The FLSA is silent on this issue. *See Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 531 (9th Cir. 2013), rev'd on other grounds, 574 U.S. 27 (2014) ("FLSA does not require compensation for an employee's lunch period….") Similarly to rest periods, an implementing regulation of the FLSA requires meal periods, *if provided*, to be duty-free,

or else the meal period time is counted as hours worked. 29 C.F.R. § 785.19.[1] But, again, the relevant issue is not whether the putative class members' meal period time was considered hours worked – it was, and the employees received pay for their meal period time. Instead, the relevant issue is whether ARDENT was required to provide meal periods to their employees. Under federal law, there is no such requirement, so federal law does not address the relevant issue. Consequently, California's meal period laws are adopted as the applicable law on the OCS.

### 3. Unfair Competition Claim

California's Unfair Competition Law (UCL), Business and Professions Code section 17200 provides the following: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice...." Bus. & Prof. Code § 17200. "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-839 (1994) (internal citations omitted); *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1359 (2010) ("an act or practice is 'unfair competition' under the UCL if it is forbidden by law").

The California Supreme Court in *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163 (2000) specified that any failure to pay wages is an unfair business practice. *Id.* at 168, 174, 178 ("[A]ny business act or practice that violates the Labor Code through failure to pay wages is, by definition … an unfair business practice."). Premium wages due under Labor Code section 226.7 for meal and rest period premiums are recoverable as restitution under the UCL. *See Safeway v. Superior Court of Los Angeles County*, 238 Cal. App. 4th 1138, 1155-56 (2015) (review denied). The statute of limitations for restitution under the UCL is four years. Bus. & Prof. Code § 17208.

---

[1] However, this regulation is invalid, and courts do not follow it. *See Havrilla v. United States*, 125 Fed. Cl. 454, 464 (2016).

Plaintiff seeks restitution of the meal and rest period premiums denied to the putative class by ARDENT's failure to provide lawful meal and rest periods. First Amended Complaint, CM/ECF Doc. No. 26 at 13. Because Plaintiff seeks restitution of meal/rest period premiums under the UCL, the look-back period for the meal and rest period claims is four years from the date of filing of Plaitniff's original complaint, or from February 23, 2014.

Under the *Parker Drilling* analysis, the relevant issue is whether there is any federal law that addresses the issue of unfair competition in the context of providing an additional remedy for the failure to provide meal or rest periods. There is no such federal law. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 908 (9th Cir. 2002) ("Mattel has no claim to a nonexistent federal cause of action for unfair competition."). Also, federal law does not require the provision of meal or rest periods, as discussed *supra*, so there can be no federal law that provides an additional remedy for not providing lawful meal or rest periods. For these reasons, Plaintiff's UCL claim survives the *Parker Drilling* analysis.

### 4. Waiting-Time Penalty Claim

Labor Code sections 201 and 202 require the payment of all wages owed at an employee's termination or resignation. Labor Code section 203 establishes a penalty of up to thirty days of wages when an employer willfully fails to comply with sections 201 and 202. The waiting-time penalty is an amount equal to the employee's daily rate of pay for each day the wages remain unpaid, up to a maximum of thirty (30) calendar days. *Mamika v. Barca*, 68 Cal. App. 4th 487, 494 (1998). Courts within the Ninth Circuit have held that the failure to pay rest period premiums in an employee's final paycheck may trigger liability for a waiting-time penalty under section 203, so long as the failure to pay is willful. *See Finder v. Leprino Foods Co.*, No. 1:13–CV–2059 AWI–BAM, 2015 WL 1137151, at *5 (E.D. Cal. Mar. 12, 2015); *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 465 (C.D. Cal. 2012). A good faith dispute as to whether wages were owed (including a good faith belief in a legal defense) precludes an award of waiting time

penalties under Section 203. *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 584 (2010). A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. 8 Cal. Code Regs. § 13520. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. *Id.*

Under the *Parker Drilling* analysis, the relevant issue is whether there is any federal law that addresses the issue of the timeframe within which an employee must be paid his or her final wages. There is no such federal law. The nearest provision of the FLSA is found in 29 U.S.C. § 206, which states in pertinent part: "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rate...." Yet this provision of the FLSA does not mandate the timing of an employee's final paycheck. Thus, there is no federal law that addresses the relevant issue, and Plaintiff's section 203 claim survives the *Parker Drilling* analysis.

### 5. *FLSA claims*

Plaintiff also brings an FLSA claim for the failure to pay overtime. First Amended Complaint, CM/ECF Doc. No. 26. The FLSA requires employers to pay non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a). The employee's regular rate generally includes "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e); cf. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948) ("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."). Even "payments" such as an employer's provision of meals or lodging must be considered. 29 C.F.R. § 778.116. The rate used by ARDENT to calculate the regular rate for the Settlement Class members was a lower than it should have been because it did not include the value of their meals and lodging.

1

### 6. *Injunctive Relief*

Although the operative complaint seeks injunctive relief for the improper method of payment for work performed on the OCS platforms, that issue is not entirely moot because the Settlement Class no longer performs work on the OCS platforms, and has not done so since the summer of 2018. Moreover, there is no indication that the minimal number of employees still working for ARDENT will ever return to work on the OCS platforms. Thus, the claim was properly released as a part of the Settlement.

### B. Certification of the Class is Appropriate

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement class is a proper class for settlement purposes. *See generally* Fed. R. Civ. P. 23(e); Manual for Complex Litigation (4th ed. 2004) § 21.632. Courts routinely and properly certify classes for settlement purposes only and the proposed certification of the class is entirely consistent with the applicable authorities. *Amchem Prods. Inc. v.* Winsor, 521 U.S. 591, 619-29 (1997). Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). All four elements are satisfied here.

### 1. *The Settlement Class Is Sufficiently Numerous*

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In addition, the class should be "ascertainable," meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). As of September 21, 2018, when the parties exchanged information in advance of the mediation, there were approximately 106 persons fitting the class definition. (Karakalos Decl. at ¶ 11.) This number was reduced to 102 as four of the Settlement Class members did not spend any overnights on the OCS. (*Id.*) This is sufficient to satisfy numerosity and ascertainability requirements. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, two of the 102 members of the Settlement Class are releasing waiting-time claims under Labor Code section 203 which have yet to ripen (their claims vest at separation). Thus, these the two remaining employees should not be treated any differently from the remainder of the class. After all, Rule 23(c)(4)(B) of the Federal Rule of Civil Procedure states: "When appropriate…, a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." In other words, each subclass must independently meet the requirements of Rule 23. *Betts v. Reliable Collection Agency*, 659 F.2d 1000, 1005 (9th Cir. 1981); *Johnson v. Am. Credit Co.*, 581 F.2d 526, 532 (5th Cir. 1978); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993) ("Subclasses must satisfy the class action requirements...."). While no bright line or threshold exists at which the numerosity requirement is met, one notable source has opined that forty (40) members may be used as a presumptive figure satisfying the numerosity requirement. *Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504, 522 (C.D. Cal. 2012). Here, the two potential subclass members does not come close to the 40-member threshold. Thus, the numerosity requirement would not be satisfied for such a subclass.

### 7. *Questions of Law or Fact are Common to the Class*

The commonality requirement requires that there be "questions of law or fact to the class." Fed. R. Civ. P. 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and law which are common to the class." *Hanlon*, 150 F.3d at 1019. The commonality requirement should be "construed permissively," meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Here, Plaintiff alleges that all putative class members were subject to the same wage and hour policies and practices as articulated in company handbooks and policy manuals. (Karakalos Decl. at ¶ 7; Orozco Decl. at ¶¶ 7-13.) The commonality requirement is met.

### 8.   *The Class Representatives' Claims Are Typical of the Class*

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives.  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010). Here, Plaintiff represents all putative class members who were not properly compensated during the Class Period due to the same unlawful policies and practices of ARDENT, e.g., its class-wide practice of not providing timely meal and rest periods and of not paying meal and rest period premiums in employees' final wages.  Accordingly, Plaintiffs' claims are typical of those of the Settlement Class members.

### 9.   *The Class Representative and His Counsel Will Fairly and Adequately Protect the Settlement Class Members' Interests.*

Rule 23(a)(4) requires that the Class Representatives "fairly and adequately protect the interests of the class."  Rule 23(g) requires the Court to consider Class Counsel's prior experience, knowledge and ability to properly represent the Class.

Here, Plaintiff Orozco will fairly and adequately protect the interests of the Settlement Class members.  He has no conflicts of interest with the other Settlement Class members and does not seek any different relief than that he seeks on behalf of Settlement Class members.  Additionally, Plaintiff is committed to the action and has devoted time to assisting counsel with the action, providing documents and reviewing pleadings.  (Orozco Decl. at ¶ 19.)  Plaintiff also assisted with preparation for mediation and attended the mediation session telephonically.  (*Id*.)  Plaintiff has no interests that are antagonistic to other Settlement Class members.  (*Id*. at ¶ 25.)  Because the Plaintiff will fairly and adequately protect the interests of the Class and because he has no conflicts of interest

1   with the other Settlement Class members the Court should appoint Edgar Orozco as Class

2   Representatives for purposes of the Settlement.

3   "An order certifying a class action ... must appoint class counsel under Rule 23(g)."

4   Fed. R. Civ. P. 23(c)(1)(B).  Courts must consider counsels' work in identifying or

5   investigating claims; counsel's experience in handling the types of claims asserted;

6   counsel's knowledge of applicable law; and the resources counsel will commit to

7   representing the class. Fed. R. Civ. P. 23(g)(1)(A). Here, the work that Plaintiff's counsel

8   performed provides a substantial basis for the Court's finding that they satisfy Rule

9   23(g)'s criteria.  For instance, they identified the issues and brought the instant action on

10  behalf of a sizeable number of putative class members, interviewed many class members

11  to evaluate the strength of Plaintiff's arguments, reviewed payroll and other class data to

12  construct a detailed damages model, participated in mediation and subsequent

13  negotiations, and eventually settled the case.  Additionally, counsel have vast experience

14  handling wage and hour cases, know the applicable law, and are committed to

15  representing the Class.  (Declaration of Michael A. Strauss ("Strauss Decl.") filed in

16  support of prior motion (CM/ECF Docket 31-5), incorporated by reference, at ¶¶ 6-15;

17  Karakalos Decl., ¶¶ 35-41.) Accordingly, the Court should appoint the law firm of Strauss

18  & Strauss, APC to represent the class as Class Counsel for purposes of the Settlement.

19  ### 10. Common Questions of Law and Fact Predominate.

20  Rule 23(b)(3) requires the Court to find that: "the questions of law or fact common

21  to class members predominate over any questions affecting only individual members."

22  The predominance "inquiry tests whether proposed classes are sufficiently cohesive to

23  warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Acmchem*

24  *Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  Here, Plaintiff alleges that questions

25  of law and fact predominate, especially because, by virtue of working on the OCS

26  platforms, Plaintiff and the putative class were all subject to the same policies, practices

27  and procedures with respect to meal breaks, rest breaks, and final payment of wages. It

28  is hard to imagine a situation where the questions or law and fact predominate more than

17

in the confined (and highly regulated) setting of OCS platform work. Claims based on this type of commonly-applied policy are generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3). *See Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1065-68 (N.D. Cal. 2007)

### 11. A Class Action is Superior to Alternative Methods.

Rule 23(b)(3) also requires the Court to find that: "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Moreover, a class action is superior to individual adjudication because the alternative to a class case in the context of employment disputes is often no case at all because workers fear economic retaliation (termination). *Rutti v. Lojack Corp.*, 2012 WL 3151077, at *6 (C.D. Cal. July 31, 2012). Here, as discussed above, Plaintiff and the putative class were all subject to the same policies, practices and procedures. The straightforward relief sought (premium wages calculated based on data readily shared by ARDENT pre-settlement), and the evidence bearing thereon, is markedly less complicated than other cases where multiple working locations necessarily lends itself to disparate enforcement of policies. On the OCS platforms disparate treatment of employees is simply not an option, especially considering the highly-regulated nature of the oil-extraction industry and the heavy hand with which rules are applied on the OCS platforms by the leaseholders.

### C. The Court Should Preliminarily Approve the Settlement as All Fairness Factors Under FRCP 23(e)(2) Have Been Met.

Pursuant to Federal Rule of Civil Procedure, Rule 23(e), "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlements minimize potentially substantial litigation expenses for both sides and conserves judicial resources. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th

Cir. 1998).  Moreover, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits.  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Here, this Settlement is fair, adequate, and reasonable under Rule 23(e)(2), as described below.

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class [FRCP 23(e)(2)(A)].

The Class Representative  and Class Counsel fairly and adequately protect the interests of the class.  Plaintiff incorporates by reference section IV.B.4, *supra*, regarding the adequacy of Plaintiff Orozco and his counsel.

### 2. The Settlement Was Negotiated at Arm's Length [FRCP 23(e)(2)(B)].

Plaintiff incorporates by reference the Arm's-Length Negotiation section of his motion for preliminary approval, CM/ECF document number 31, pages 25 through 26.

### 3. The Relief Provided for the Class is Adequate [FRCP 23(e)(2)(C)].

The terms of the Settlement provide substantial monetary benefits to Settlement Class members and strongly support preliminary approval.  It creates an average net settlement payment of $14,828.89 for each of the approximately 102 Settlement Class members, which assumes a fee award of the maximum 33.33% of the Maximum Settlement Amount, a costs award of the maximum $20,000, administrative costs of $7,500, and a Service Award of the maximum $10,000.  (Karakalos Decl. at ¶ 32, Ex. B.) This constitutes a substantial recovery that easily falls within the range of reasonableness for settlement approval.  Moreover, considering that 53 of the Settlement Class members previously signed release packets in exchange for a total of $60,000, this additional average recovery here is far in excess of what they previously received.  On average, the Settlement Class members who signed releases prior to the Settlement received $1,132.08 ($60,000/53). The average net settlement under this Settlement ($14,828.89) is more than 13 times greater, and in one case, one-hundred times greater. (*Id*. at ¶ 34.)

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR PRELIMINARY APPROVAL**

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Deaver v. Compass Bank*, No. 13–cv–00222–JSC, 2015 WL 4999953, at *9 (N.D. Cal. 2015).  Here, the total potential damages amount to approximately $4.6 million.  (Karakalos Decl. ¶ 29.)  The Settlement of $2,325,000 is within the reasonable range, especially when considering the following:

      i.    *The Cost, Risk, and Delay of Trial and Appeal [FRCP 23(e)(2)(C)(i)].*

Several risk/cost/timing factors contributed to the above discounts.  First, at the time of the settlement, Plaintiff valued the state law overtime claim at over $8.4 million.  Karakalos Declaration in Support of Motion for Preliminary Approval, CM/ECF Doc. No. 31-1 at 8.  Due to the Supreme Court's ruling in *Parker Drilling*, the new value of that claim is $0.  Obviously, the California overtime claim was risky.

The claim for waiting-time penalties is not without its own risks.  Plaintiff now calculates the value of his section 203 penalty claim at approximately $1.09 million.  But a finding of liability on that claim requires a showing that ARDENT's failure to pay meal and rest period premiums was willful.  ARDENT has taken the position that it was under the impression all along that California wage-and-hour laws would never apply on the OCS platforms. (Karakalos Decl. ¶ 31.)  Whether this defense would hold up at trial is unknown.  But it is a risk that warranted consideration in the reaching of a settlement amount.

Also, it is not certain whether all of Plaintiff's state law claims survive the *Parker Drilling* analysis.  While Plaintiff believes that federal laws do not "address the relevant issues," no court has yet made such a determination.  Plaintiff values the meal and rest period claims at approximately $700,000 (combined).

The FLSA claim is not without risk, because although there are FLSA regulations indicating that the value of meals and lodging must be included in employees' regular rates of compensation, *see* 29 C.F.R. § 778.116, there is little case law authority

20

construing those regulations.  The value of Plaintiff's FLSA claim is approximately $2.4 million.

Obtaining class certification also presents a risk. ARDENT contends that class certification is not warranted, claiming that the workers on each platform were subject to different levels of control and different policies with respect to alarms, recreation, travel, working conditions, etc.

Finally, Plaintiff and Plaintiff's Counsel recognize and acknowledge the expense and delay of the lengthy proceedings necessary to prosecute the Action against ARDENT through trial and appeals.  Given the limited precedent governing some of the key legal issues in the case, Plaintiff recognizes that appeals would be a virtual certainty in the action. (Karakalos Decl. at ¶ 15.)

Given these risks, a settlement of $2,325,000 for claims now valued at approximately $4.6 million is an excellent result.

> ii. *The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims [FRCP 23(e)(2)(C)(ii)].*

Plaintiff incorporates by reference the Effectiveness of Class Notice section of his motion for preliminary approval, CM/ECF document number 31, pages 28 through 29.

> iii. *The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment [FRCP 23(e)(2)(C)(iii)].*

Plaintiff incorporates by reference the Attorney's Fees section of his motion for preliminary approval, CM/ECF document number 31, pages 29 through 30.

> iv. *Any Agreement Required to be Identified Under Rule 23(e)(23) [FRCP 23(e)(2)(C)(iv)].*

Other than the Settlement, there are no other agreements herein.

//

//

//

**4.** ***The Settlement Treats Class Members Equitably Relative to Each Other***
***[FRCP 23(e)(2)(D)].***

The Settlement does not unfairly grant preferential treatment to any Class Member.
The parties have also carefully constructed a formula for payments to Settlement Class
members to ensure an equitable distribution of the settlement funds based on the total
number of overnights they spent on the platforms.  In fact, even though more than half
the Settlement Class (53 out of 102) signed a Release of Liability form in exchange for a
total of $60,000 (averaging out to $1,132.08 per person), these signatories will
nevertheless share in the Maximum Settlement Amount to the same proportion/degree as
if they had not signed any Release of Liability.  (Settlement at ¶ 3(A).)

Moreover, the proposed enhancement for Plaintiff of $10,000 is in line with awards
in other wage-and-hour cases in California district courts.  *See Thomas v. TD Ameritrade,*
*Inc.*, No. C08-02397 WDB, 2009 WL 8730175, at *2 (N.D. Cal. Sept. 29, 2009) ($15,000
awarded); *Cordy v. USS-POSCO Industries*, No. 12–cv–00553–JST, 2014 WL 1724311,
at * 3 (N.D. Cal. Apr. 28, 2014) ($8,000 awarded).

**D. The Proposed Class Notice Should Be Approved**

Plaintiff incorporates by reference the Proposed Class Notice section of his motion
for preliminary approval, CM/ECF document number 31, page 31.

**E. The Court Should Appoint CPT Group, Inc. as Claims Administrator**

Plaintiff incorporates by reference the Claims Administrator section of his motion
for preliminary approval, CM/ECF document number 31, page 31.

**F.  Proposed Schedule for Remaining Procedures**

Plaintiff proposes the following schedule for final approval assuming preliminary
approval is granted on July 18, 2019:

| PRELIMINARY APPROVAL HEARING | July 18, 2019 |
|---|---|
| ARDENT to provide Class contact information (10 business days from entry of order) – Settlement at ¶ 9(A) | August 1, 2019 |

| CPT Group to mail Notice Packets (10 business days from receipt of information) – Settlement at ¶ 9(B) | August 15, 2019 |
|---|---|
| Settlement Class members to possibly opt-out (45 calendar days from mailing) – Settlement at ¶ 9(C) | September 29, 2019 |
| Motion for final approval and attorney fees/costs due (proposed as 40 days in advance of hearing to give objectors time to review the motion as well) | October 11, 2019 |
| Settlement Class members to submit objections (20 days before Final Approval Hearing) – Settlement at ¶ 9(D) | November 1, 2019 |
| FINAL APPROVAL HEARING (proposed) | November 21, 2019 |

## VII.  DENYING THIS MOTION WOULD INVARIABLY HARM THE CLASS.

Should this Court force the parties renegotiate the terms of the Settlement to provide an additional amount to 100 of the 102 members of the Settlement Class, or to otherwise form a subclass which does not satisfy the numerosity requirements of Rule 23, would effectively unwind current Agreement.  This could, effectively, result in no settlement at all, especially since *Newton* was reversed.  This is would be an inequitable result.

## VIII.  RECONSIDERATION IS APPROPRIATE.

Fed. R. Civ. Proc. 60(b) provides that a court may relieve a party or its legal representative from an order for "any … reason that justifies relief."  A motion under Rule 60(b) "must be made within a reasonable time."  *Id.*  Central District Court L.R. 7-18(b) provides that a motion for reconsideration of a decision on any motion may be made based on "the emergence of new material facts or a change of law occurring after the time of such decision."  Here, the motion is based on new material facts presented to Plaintiff's counsel following the court's previous ruling on preliminary approval.  Namely, information relating to the number of workers still employed by ARDENT with an arguably viable claim for waiting-time penalties.  The court denied the prior motion without prejudice, but since Plaintiff is seeking approval of the same settlement agreement, without alteration or the inclusion of a sub-class, this motion is also being

brought as a motion for reconsideration.  Given that Plaintiff has now presented the Court with information that was not available at the time of the hearing of the original preliminary approval motion, and that information weighs in favor of granting that motion, reconsideration is appropriate.

## IX.    CONCLUSION

For the reasons stated hereinabove, Plaintiff, on behalf of herself and the class of oil platform workers, respectfully requests the Court to grant the within motion for preliminary approval of class action settlement or, in the alternative, grant Plaintiff's motion for reconsideration of the previous denial of his motion for preliminary approval.

Dated:  June 13, 2019            **STRAUSS & STRAUSS, APC**

By: /s/_____
Aris E. Karakalos
Attorneys for Plaintiffs and the Class

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR PRELIMINARY APPROVAL**