UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2763-GW(SSx) | Date | September 12, 2019 |
|---|---|---|---|
| Title | *Edgar Orozco v. Ardent Companies, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Anne Kielwasser | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Michael A. Strauss | Joshua D. Kienitz | |

**PROCEEDINGS:** **RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CM/ECF DOC. NO. 34 [42]**

Court and counsel confer. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion is GRANTED. The Court sets a final fairness hearing for February 3, 2020 at 8:30 a.m. Counsel for Plaintiff is to file an amended proposed order forthwith.

: 12

Initials of Preparer   JG

<u>*Orozco v. Ardent Companies, Inc.*</u>; 2:18-cv-02763-GW-(SSx)
Tentative Ruling on Renewed Motion for Preliminary Approval of Class Action Settlement, or, in the Alternative, Motion for Reconsideration of Order Denying Motion for Preliminary Approval of Class Action Settlement

## I. <u>Background</u>

<u>A. Procedural History</u>

Plaintiff Edgar Orozco ("Plaintiff") filed a complaint on behalf of himself and those similarly situated against Ardent Companies, Inc. ("Defendant") and Does 1 through 100 for: (1) failure to pay California overtime and double-time premium wages; (2) failure to provide lawful meal and rest periods; (3) unfair competition under Business & Professions Code § 17200; (4) violation of California Labor Code § 203; and (5) violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1). *See generally* First Amended Complaint ("FAC"), Docket No. 26.

Defendant provides services to drilling operations off the California coast, including on fixed oil platforms on the Outer Continental Shelf. *See* FAC ¶ 2. Plaintiff alleges that Defendant mandates that hourly workers perform their work in "hitches," which are multiple day shifts that begin when employees depart California on Defendant's vessel, and end when employees return to California soil. *Id.* ¶¶ 2-5. Plaintiff's legal claims are based primarily on the following three allegations: (1) Defendant does not pay employees for all hours during which employees are on "hitches" and instead has a "policy and practice of paying [its] hourly employees for twelve hours each day," *id.* ¶ 9; (2) Defendant failed to provide adequate meal and rest periods, *id.* ¶ 47-53; and (3) Defendant has willfully failed to pay wages owed at termination of employment. *Id.* ¶¶ 66-71.

The parties engaged in pre-mediation discovery during which Defendant produced approximately 500 pages of relevant documentation as well as the names and contact information for all putative class members. *See* Notice of Plaintiff's Motion and Motion for Preliminary Approval of Class Action Settlement ("MPA") at 5. Defendant also produced a corporate representative for deposition. *See id.* The parties attended a mediation in San Francisco under the guidance of mediator Michael Dickstein. *Id.* at 5-6. Formal mediation did not result in settlement, but the parties were able to reach resolution through continued telephonic discussions with Mr. Dickstein. *See id.* at 6.

Plaintiff originally filed a Motion for Preliminary Approval of Class Action Settlement on February 19, 2019. *See* Notice of Motion and Motion for Preliminary Approval of Class Action,

1

Docket No. 28. The Court denied the motion because Plaintiff failed to address recent amendments to Federal Rule of Civil Procedure 23(e)(2). *See* Order, Docket No. 30. Plaintiff filed an amended motion for preliminary approval on March 22, 2019. *See* MPA. The Court denied the motion without prejudice because Plaintiff failed to demonstrate that the requirements for class certification had been met. *See* Order on Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Order"), Docket No. 34.

Plaintiff filed a renewed motion for preliminary approval. *See* Notice of Motions and Renewed Motion for Preliminary Approval of Class Action Settlement, or in the Alternative, Motion for Reconsideration of Order Denying Motion for Preliminary Approval of Class Action Settlement ("RMPA"), Docket No. 42. Defendant opposed this motion. *See* Defendant Ardent Companies, Inc's Opposition to Plaintiff's Third Motion for Preliminary Approval of Class Action Settlement and Objection to Settlement ("Opp'n"), Docket No. 43. On July 15, 2019, the Court issued an Order indicating that it would treat the motion for preliminary approval as a motion to compel enforcement of the settlement. *See* Docket No. 47. The Court indicated that if the settlement could be approved without alteration to any material terms that the Court would compel Defendant to honor the settlement agreement. *See* Docket No. 56. The parties submitted supplemental briefing on the RMPA. *See* Defendant Ardent Companies, Inc.'s Supplemental Brief Re Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Def. Supp"), Docket No. 66; Plaintiff's Supplemental Briefing in Support of Renewed Motion for Preliminary Approval or, in the Alternative, Motion for Reconsideration ("Pl. Supp."), Docket No. 67.

B. Settlement Agreement

1. *Scope of the Class and Released Claims*

The Settlement Agreement currently before the Court covers:

> All current and former hourly employees of Defendant Ardent Companies, Inc., who, at any time from February 23, 2014, through the date of preliminary approval ("Class Period"), worked on oil platforms off the California coast on the Outer Continental Shelf (consisting of submerged lands, subsoil, and seabed more than three nautical miles off the mainland) for periods of 24 hours or more, stayed offshore overnight, and whose offshore shifts of hitches began from and ended on California soil.

("Settlement Class" or "class members"). *See* Long-Form Stipulation of Settlement ("Settlement Agreement" or "Settlement"), MPA, Ex. A, Docket No. 31-2 at 2. As part of the Settlement, Plaintiff and all members of the Settlement Class who do not opt out, release "all claims and causes

of action, either actually alleged or which could have reasonably been alleged, under California law and/or the FLSA, based on the facts, claims, causes of action or legal theories of relief in the Complaint." *Id.* at 2-3. All members of the Settlement Class will have forty-five days from the date of mailing of notice packets by the settlement administrator to submit a form requesting exclusion from the class. *Id.* at 8.

    2. *Relief*

In exchange for class members' release of their claims, the Settlement provides monetary consideration.[1] The Defendant agrees to pay a non-reversionary maximum settlement amount of $2,325,000. *Id.* at 3-4. This amount includes $60,000 that Defendant previously paid to 53 of the class members who signed a Release of Liability. *Id.* at 3. It is also inclusive of an estimated maximum settlement administration fee of $7,5000, a maximum class representative service award for Plaintiff of $10,000, a maximum of $775,000 in attorney's fees for Class Counsel (approximately 33%), and up to $20,000 in actual costs and expenses incurred by Class Counsel. *Id.* at 4. The remainder, an estimated $1,462,500 will be distributed among the class members who do not opt out of the Settlement. Assuming no class members opt out, this would amount to approximately $14,338 per class member, exclusive of any previous recovery received by class members for signing Defendant's release packets. *See generally id.* The amount each class member will be eligible to receive will be calculated proportionally based upon the number of "covered workdays" each class member spent on the oil platforms, at the ports from which employees departed and returned from the oil platforms, and on the vessels en-route to and from the oil platforms. *Id.* at 2, 5. For any checks not cashed within 180 days from the date mailed, the funds will escheat to the California Department of Industrial Relations. *Id.* at 6.

## II. Legal Standard

Under Ninth Circuit precedent, there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted). Nonetheless, Federal Rule of Civil Procedure 23(e) requires district courts to review and approve class action settlements. "[S]ettlement class actions present unique due process concerns for absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see Allen*, 787 F.3d at 1223 ("[T]he

---

[1] The settlement agreement does not provide for equitable relief of the kind requested in the FAC, and the Settlement Agreement explicitly does not operate as an "admission of any liability." *Id.* at 10.

district court has a fiduciary duty to look after the interests of those absent class members."). In instances where parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of class action settlements invokes a two-step inquiry. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). As the first step, courts decide if a class exists. *Staton*, 327 F.3d at 952. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As the second step, courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. If the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." *Id.*

During the preliminary approval stage, courts also "determine whether the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). Courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain provisions. [ ] The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

### III. Analysis

A. Certification of Settlement Class

Under the foregoing legal standard, the Court would begin by deciding whether class certification is warranted. The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *In re Northern Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982); *see also Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629 (9th Cir. 2018) ("A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation."). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party

seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23(a) requires the putative class to meet four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. *Id.*; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). In addition, the proposed class must satisfy Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, the Settlement was reached prior to formal certification of a class by the Court. Therefore, as a preliminary matter, Plaintiff seeks certification of a class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23(b)(3). A court may certify a class for settlement purposes only. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015). In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained the differences between approving a class for settlement and for litigation purposes:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the Rule — those designed to protect absentees by blocking unwarranted or overbroad class definitions — demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Id.* at 620.

The Court is permitted to consider any material necessary to its determination, though it should not go so far as to engage in a trial of the merits. *Id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits *if they overlap* with the Rule 23(a) requirements.") (emphasis added); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975); *Sali*, 889 F.3d at 630 ("At this preliminary stage, a district court may not decline to consider evidence solely

on the basis that the evidence is inadmissible at trial.").

    As discussed above, the proposed Settlement Class is defined in the Agreement as:

> All current and former hourly employees of Defendant Ardent Companies, Inc., who, at any time from February 23, 2014, through the date of preliminary approval ("Class Period"), worked on oil platforms off the California coast on the Outer Continental Shelf (consisting of submerged lands, subsoil, and seabed more than three nautical miles off the mainland) for periods of 24 hours or more, stayed offshore overnight, and whose offshore shifts of hitches began from and ended on California soil.

Settlement Agreement at 2. The Court will analyze whether the proposed Settlement Class meets each of the Rule 23 certification requirements in turn.

    *1. Numerosity*

    Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable . . . ." *Id.* As noted above, the Settlement Class consists of approximately 102 people. MPA at 13. Although the numerosity requirement is not tied to a fixed numeric threshold, "[i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. Appx. 646, 651 (9th Cir. 2010). Requiring joinder of over 100 individuals would be impracticable. Therefore, the Court would find that the numerosity requirement is met.

    *2. Commonality*

    Rule 23(a)(2) requires that the case present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), clarified that to demonstrate commonality, the putative class must show that their claims "depend upon a common contention of such a nature that it is capable of classwide resolution − which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

    Plaintiff asserts that "all putative class members were subject to the same wage and hour policies . . . including having to remain on the oil platforms for the entirety of the multi-day hitch." *See* MPA at 14. The Court previously found commonality lacking because the complaint alleged damages for wait time penalties incurred upon termination and the class definition included both current and former employees. *See* Order at 5-6. Plaintiff has subsequently clarified that of the 102 putative class members, there is only one individual who has been continuously employed by

Defendant, and therefore would not have incurred wait time penalties. *See* Pl. Supp. at 3. The wait time penalties claim allegedly accounted for $3.2 million of an estimated $14.1 million of potential damages in this action, or approximately 23% of potential damages. Even if distribution of the settlement had been broken out by damages type, and the continuously employed class member had not received any wait time damages, the additional funds available to each of the other putative class members would be insignificant.[2] Moreover, the wait time penalties claim is a derivative claim based on alleged meal and rest break violations suffered by the entire class, and therefore would, for the most part, be subject to common proof. Therefore, the Court would find that the commonality requirement is satisfied.

      3. *Typicality*

Rule 23(a)(3) requires the putative class to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The claims of the representative parties need not be identical to those of the other putative class members; "[i]t is enough if their situations share a 'common issue of law or fact,' and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (internal citations omitted). The Court would find that the typicality requirement is met here. All putative class members' claims relate to meal and rest break violations, or are derivative of those alleged violations. Moreover, over 99% of the class members have the same wait time penalty claims as the Named Plaintiff. Therefore, the Court would find that the typicality requirement is satisfied.

      4. *Adequacy*

Finally, Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class." *Id.* "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Previously the Court held that the Named Plaintiff was not adequate because he did not have standing to pursue injunctive relief on behalf of current employees. *See* Order at 6-7.

---

[2] The Court estimates that this allocation would yield a 0.2% increase in the settlement amount available for each of the putative class members who have not been continuously employed by Defendant.

7

However, Plaintiff clarified that Defendant no longer employs individuals on the Outer Continental Shelf platforms. *See* Pl. Supp. at 5. This lawsuit was entirely based upon the meal and rest break and pay policies specific to work done on the Outer Continental Shelf. *See generally* FAC. Thus, any claims for injunctive relief are moot. Defendant asserts that the injunctive relief claims in the FAC are not moot because Plaintiff has not demonstrated that Defendant is not free to return to its illegal conduct. *See* Def. Supp. at 5. But Defendant has not indicated that it has any plans to resume employment of individuals on the Outer Continental Shelf. Furthermore, there are only three putative class members who continue to work for Defendant, and there is no reason to believe that even if Defendant did resume operations on the Outer Continental Shelf that those individuals would be employed there. Therefore, the Court would find that the representative party is an adequate representative of the class.

   5. *Predominance*

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (quoting *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). As described above, all putative class members' claims relate to the same alleged meal and rest break violations, or are derivative of those alleged violations. Moreover, over 99% of the class members have an identical set of claims as the Named Plaintiff. Therefore, the Court would find that the predominance requirement has also been met.

  B. <u>Preliminary Approval of the Revised Settlement</u>

   Now, the Court turns to the substance of the Revised Settlement. The Ninth Circuit has noted various factors for district courts to consider in deciding whether a class action settlement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted).

In addition, the Ninth Circuit instructs district courts to examine potential red flags indicating collusion. "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947.

Under recent amendments to the Federal Rules of Civil Procedure, district courts must now consider a list of factors delineated in Rule 23(e)(2), which are somewhat similar to the Ninth Circuit's longstanding factors and considerations:

> **(2) *Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>> **(A)** the class representatives and class counsel have adequately represented the class;
>>
>> **(B)** the proposal was negotiated at arm's length;
>>
>> **(C)** the relief provided for the class is adequate, taking into account:
>>> **(i)** the costs, risks, and delay of trial and appeal;
>>>
>>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>>
>> **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3]

Regarding these recent amendments, the Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Recognizing that, the Advisory Committee explained that it did not intend to "displace any factor [used by federal

---

[3] After propagating certain amendments, the Supreme Court transmitted those amendments to Congress, instructing that those amendments "shall take effect on December 1, 2018, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order Submitting Amendments to Federal Rules of Civil Procedure at 3 (April 26, 2018), https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf; *see generally, In re Pangang Grp. Co., LTD.*, 901 F.3d 1046, 1050 (9th Cir. 2018) (describing amendment process).

courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."[4] *Id.* As such, to the extent possible the Court would apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent. The Court would also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors . . . distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. If the Court's analysis of the Ninth Circuit's longstanding factors does not encompass any of the Rule 23(e)(2) factors, the Court will explicitly discussed such factors at the conclusion of its analysis.

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). A court need not conduct a complete analysis of the fairness factors at this time because "some of these 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). Instead, at this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (internal quotation marks omitted). However, in instances where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d at 952. Indeed, settlements negotiated *before* class certification "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. This "more exacting

---

[4] "[T]he Advisory Committee Notes provide a reliable source of insight into the meaning of a rule . . . ." *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002).

10

review . . . ensure[s] that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027).

### 1. Whether the Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

Addressing whether the Revised Settlement is the product of serious, informed, non-collusive negotiations, the Court first looks to whether the parties engaged in an adversarial process to arrive at that agreement. The parties engaged in extensive formal and informal discovery prior to the mediation which allowed them to develop a nuanced understanding of the factual circumstances of the case. *See* Declaration of Aris E. Karakalos in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Karakalos Decl."), Docket No. 31-1, ¶¶ 10-11. The parties also engaged in mediation with professional mediator Michael E. Dickstein. *See id.* ¶ 14. Although the case did not settle at mediation, Mr. Dickstein continued to engage with both sides telephonically and after several months the parties were able to reach a resolution. *See id.*

In other words, only after significant discovery and the use of a mediator did the parties enter into the Settlement. That order and process matters to the Court. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (holding that the parties' use of mediator and fact that significant discovery had been conducted "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (noting that the parties' use of a mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."). Though the Court does not grant undue weight to the recommendation of the parties' counsel, the fact they worked on these cases at length and have an understanding of their risks, also cuts slightly in favor of finding the settlement procedurally robust and the product of arm's length negotiations. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. Mar. 9, 1989) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.") (quotation omitted).

It is clear from the course of proceedings and the Settlement that the class representative

and class counsel have adequately represented the class and that the proposal was negotiated at arm's length, which goes to at least two of the factors in the recently amended Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2)(A)-(B). The above speaks to some degree to Rule 23(e)(2)(C), but the Court will include other relevant analysis for that determination below.

### 2. Obvious Deficiencies

Regarding the second of the longstanding factors, the Court would not find any obvious deficiencies in the Revised Settlement. There are no obvious indications of collusion, and Plaintiff negotiated a substantial sum of monetary damages for the class ($2,325,000), despite the identified potential deficiencies in their claims. *See* MPA at 7. Attorneys' fees were set at a maximum of 33.33% of the settlement total ($775,000). *See id.* Although the Court is unlikely to ultimately uphold such a high attorneys' fee award, it is not an objectively unreasonable request, and therefore the Court would not find that the attorneys' fee requested is indicative of collusion. Therefore, the Court would not find that there are any red flags or obvious deficiencies present in this settlement.

### 3. Falling Within the Range of Possible Approval

As to the fourth factor, the Court would find that the Revised Settlement falls within the range of possible approval. "To determine whether a settlement 'falls within the range of possible approval' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Shuchardt v. Law Office of Rory W. Clark*, No. 15-CV-01329-JSC, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1080). In hindsight, it is quite clear that Plaintiffs had no guarantee of recovery, given that recent Supreme Court precedent has indicated that the overtime and minimum wage claims alleged fail as a matter of law. *See Parker Drilling Mgmt. Servs. Ltd. v. Newton*, 139 S.Ct. 1881, 1893 (2019). Therefore, the Court would certainly find that the substantial monetary damages negotiated for the class is sufficient to fall within the range of possible approval.

### 4. Preferential Treatment

Regarding the third factor, the Court does not find indications of preferential treatment in the Revised Settlement. To determine the presence of preferential treatment, "the Court looks to whether the settlement agreement provides preferential treatment to any class member." *Philliben v. Uber Techs., Inc.*, No. 14-CV-05615-JST, 2016 WL 4537912, at *4 (N.D. Cal. Aug. 30, 2016).

12

The Court would construe this factor as similar to the newly amended Rule 23(e)(2) factor that asks the Court to consider whether "the proposal treats class members equitably relative to each other." *See* Fed. Civ. P. 23(e)(2)(D). The Class members will be compensated based on a simple formula which allocates settlement funds based upon the number of covered workdays each individual class member worked in which the class member stayed overnight on the Outer Continental Shelf. *See* Settlement ¶ 4(B). The Court would find this is a fair method for compensating class members and that it treats class members equitably. This factor thus cuts in favor of approving the Revised Settlement.

In sum, based upon the foregoing analysis the Court would find that the Revised Settlement is adequate in light of the largely overlapping substantive considerations in recently amended Rule 23(e)(2)(C)-(D). *See* Fed. R. Civ. P. 23(e)(2)(C)-(D) (in determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).").[5] Therefore, the Court would conclude that the "record support[s] the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1), 2018 advisory committee notes.

C. Adequacy of Class Notice

Pursuant to Rule 23(e), district courts must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *See* Rule 23(e)(1)(B). Regarding Rule 23(b)(3) classes, the following subsection provides:

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii)

---

[5] The only factor in the recently amended Rule 23(e)(2)(C) not entirely discussed above is "any agreement required to be identified under Rule 23(e)(3)." *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Rule 23(e)(2)(C)(iv), asks that "any agreement required to be identified under Rule 23(e)(3)" is thereby identified. Plaintiff indicated that there are no other agreements other than the settlement. *See* MPA at 23. Thus, this requirement is satisfied.

13

the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B) (reformatted for style herein). As such, the rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In addition, due process mandates that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *See id.* at 174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Class notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

In this case, notice packets will be mailed to all class member at their last known address on file with Defendant. *See* Settlement ¶ 9(A). The Settlement Administrator will run the names of all Class Members through the National Change of Address database and will update any addresses as necessary. *See id.* ¶ 9(B). The notice packets will disclose the amount of the Class Member's estimated settlement award and will also include instructions for requesting exclusion from the class or objecting to the terms of the settlement. *See id.* ¶ 9(D)-(F). The Court would conclude that the proposed class notice is the "best notice that is practicable under the circumstances, including individual notice to all embers who can be identified through reasonable effort." *See* Rule 23(c)(2)(B). As long as such notice includes "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)," then the Court would deem this requirement satisfied. *See id.*

D. Appointing Class Counsel and Class Representatives

The Court has found that Named Plaintiff is adequate to represent the class for certification purposes and finds no reason to believe that Named Plaintiff will not vigorously represent the class moving forward. With that said, the Court would appoint the requested class representative for purposes of this lawsuits and the Settlement. *See Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019 WL 861425, at *5 (N.D. Cal. Feb. 22, 2019) ("Because the Court finds that Plaintiffs

meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives.").

The Court must also appoint class counsel. *See* Fed. R. Civ. P. 23(c)(1)(B). Factors that the Court considers in this inquiry include: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *See* Fed. R. Civ. P. 23(g)(1)(A). Based on the evidence presented going toward these factors and the Court's firsthand experience in witnessing Plaintiffs' counsel for over a year in litigating this matter, the Court would find that these factors cut in favor of appointing Strauss & Strauss, APC as class counsel. The Court would hereby appoint Straus & Strauss, APC as class counsel for purposes of this litigation and the Revised Settlement.

## IV. Conclusion

For the foregoing reasons, the Court would **GRANT** the RMPA.